The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ERIC SKANSGAARD, as an individual and as a representative off the classes,<br><br>Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A. and BAC HOME LOANS SERVICING, L.P.<br><br>Defendants. | NO. 2:11-cv-00988 MJP<br><br>**DEFENDANTS' MOTION TO DISMISS AND SUPPORTING MEMORANDUM**<br><br>**NOTE ON MOTION CALENDAR: FRIDAY, JULY 15, 2011**<br><br>**ORAL ARGUMENT REQUESTED** |

## MOTION

Defendants Bank of America, N.A. ("BANA") and BAC Home Loans Servicing, L.P. ("BHLS") (collectively, "Defendants"), by and through undersigned counsel, move this Court for an Order dismissing all claims of plaintiff Eric Skansgaard ("Plaintiff") pursuant to Federal Rule of Civil Procedure 12(b)(6). This Motion is supported by the Memorandum in Support of Motion to Dismiss set forth below; the files and pleadings in this matter; applicable case law, including the authorities referenced in the Memorandum; all exhibits; matters of which the Court may take judicial notice; and/or such other arguments, evidence and authorities as may be submitted or allowed prior to or at the hearing of this matter. A proposed Order dismissing this case also accompanies this Motion.

DEFENDANTS' MOTION TO DISMISS AND SUPPORTING MEMORANDUM. - 1
CASE NO. 2:11-CV-00988 MJP

116589.0328/5108669v1

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

**I.     INTRODUCTION/RELIEF REQUESTED**

This is a straightforward contract case, the outcome of which is dictated by the unambiguous terms of the contract in question. Plaintiff Eric Skansgaard ("Plaintiff" or "Skansgaard") is the mortgagor on a mortgage loan serviced by Defendant BAC Home Loans Servicing, LP ("BHLS"). Skansgaard's Deed of Trust requires that he maintain flood insurance on his property, "in the amounts and for the periods" required by BHLS. In early 2010, BHLS sent Skansgaard a series of letters informing him his existing flood insurance was less than the full replacement value of his property – the amount of insurance coverage recommended by federal regulators and required by BHLS. In those same letters, BHLS requested Skansgaard purchase additional insurance so that his flood insurance coverage would cover the full replacement value. After Skansgaard failed to purchase the additional coverage, thereby breaching his Deed of Trust, BHLS purchased the coverage and charged it to his account, allegedly receiving a commission as a result of this force-placement. Skansgaard now brings suit against BHLS and its parent company, Bank of America, N.A. ("BANA"), for breach of contract, breach of the implied covenant of good faith and fair dealing, and violation of the Washington Consumer Protection Act ("CPA"), RCW § 19.86.010 *et seq*. Skansgaard's claims fail as a matter of law and should be dismissed.

To begin, the plain language of the Deed of Trust gives BHLS the discretion to determine the amount of flood insurance Skansgaard must maintain. He must maintain flood insurance coverage "in the amounts and for the periods" BHLS requires. Because Plaintiff cannot escape the plain meaning of his Deed of Trust's terms, his breach of contract claim fails. His claim for breach of the covenant of good faith and fair dealing is based on the same misreading of his Deed of Trust and likewise fails; moreover, Plaintiff cannot maintain that BHLS abused its discretion under the Deed of Trust when all it did was follow federal flood insurance coverage guidance.

DEFENDANTS' MOTION TO DISMISS AND SUPPORTING
MEMORANDUM. - 2
CASE NO. 2:11-CV-00988 MJP

116589.0328/5108669v1

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON  98101-2338
206.223.7000 FAX: 206.223.7107

Plaintiff's claims under the CPA and for declaratory judgment also fail, because they rely on the same misreading of his Deed of Trust.  To the extent these claims also rely upon the proposition that Defendants obtained unjust compensation – in the form of a commission – in connection with the force-placement of flood insurance, the claims fail as a matter of law because, based upon the facts alleged, Defendants' conduct was neither unfair nor deceptive.  Plaintiff was given multiple opportunities to purchase the insurance on his own from the provider of his choice, and was repeatedly warned that: (1) flood insurance purchased by his lender could be more expensive than insurance he obtained on his own, and (2) Defendants or their affiliates might receive a commission for lender-placed flood insurance.  Plaintiff nonetheless chose not to purchase the insurance himself.

The Complaint, therefore, should be dismissed in its entirety, with prejudice.

## II. FACTUAL BACKGROUND AND ALLEGATIONS

### A. *Plaintiff's Allegations.*[1]

Plaintiff, a resident of Carson City, Nevada, obtained a mortgage loan in the amount of $83,686.00 from Eagle Home Mortgage in October 2002.  Compl. ¶¶ 8, 13; *see also* Skansgaard Deed of Trust, Exh. 1 to the Declaration of John S. Devlin III ("Devlin Decl."). Plaintiff's loan was insured by the Federal Housing Administration ("FHA") and secured by a Deed of Trust on property in Hoquiam, Washington.  Compl. ¶ 13.  BANA is the current owner and lender-in-interest of Plaintiff's mortgage loan, and BHLS services his loan.  *Id.* Plaintiff's current principal balance is less than $73,000.00.  *Id.*

Because the property securing Plaintiff's loan is located in an area designated as a Special Flood Hazard Area under the National Flood Insurance Act, Plaintiff is required to carry flood insurance on his property "in an amount **at least** equal to the outstanding principal

---

[1] The allegations herein are taken in part from Plaintiffs' Complaint and are intended only to aid in the Court's resolution of this Motion to Dismiss.  *See Newdow v. Lefevre*, 598 F.3d 638, 642 (9th Cir. 2010) (in evaluating motion to dismiss, court accepts allegations in the complaint as true).  By reciting these allegations, Defendants do not admit them and reserve their right to challenge them.

DEFENDANTS' MOTION TO DISMISS AND SUPPORTING MEMORANDUM. - 3
CASE NO. 2:11-CV-00988 MJP
116589.0328/5108669v1

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON  98101-2338
206.223.7000 FAX: 206.223.7107

1  balance of the loan or the maximum amount of coverage made available under the [NFIA],

2  whichever is less" pursuant to 42 U.S.C. § 4012a(b)(1).[2]  *Id.* ¶ 14 (emphasis added).  In

3  addition, Plaintiff's Deed of Trust contains a paragraph governing his obligation to purchase

4  flood insurance.  That paragraph of the Deed of Trust states:

> Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, **against any hazards, casualties, and contingencies**, including fire, for which Lender requires insurance.  This insurance shall be maintained **in the amounts and for the periods that Lender requires**.  Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary.

Devlin Decl., Exh. 1 at 3, ¶ 4 (emphasis added).[3]  The Deed of Trust also provides:

> If Borrower fails to . . . perform any [of the] covenants or agreements contained in this Security Instrument . . . then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance, and other items mentioned in paragraph 2.[4]  Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument.

*Id.* at 4, ¶ 7.

Plaintiff obtained and maintained flood insurance in an amount sufficient to cover his principal balance only.  Compl. ¶¶ 16-17.  On February 25, 2010, BHLS sent Plaintiff a letter informing him that he was required to maintain flood coverage in an amount at least equal to the lesser of: (1) the maximum insurance available under the National Flood Insurance Program ($250,000.00); or (2) the replacement value of the improvements to his property, as

---

[2] The "maximum amount of coverage made available" for a single-family home under the NFIA is $250,000.  42 U.S.C. § 4013(b)(2); 44 C.F.R. § 61.6.

[3] This Court may properly consider Plaintiff's Deed of Trust (as well as the letters referenced herein and attached to the Devlin Declaration) in ruling on this motion to dismiss because they are referenced in the Complaint and form the basis for all or part of Plaintiff's claims.  *See Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) ("Under the 'incorporation by reference' rule of this Circuit, a court may look beyond the pleadings without converting the Rule 12(b)(6) motion into one for summary judgment.").

[4] Paragraph 2 specifically mentions "premiums for insurance required under Paragraph 4."  Devlin Decl. Exh. 1 at 2, ¶ 2.

DEFENDANTS' MOTION TO DISMISS AND SUPPORTING
MEMORANDUM. - 4
CASE NO. 2:11-CV-00988 MJP

116589.0328/5108669v1

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

1  measured by the amount of homeowner's insurance Plaintiff had purchased for the property.
2  *See id.* ¶ 18; *see also* Devlin Decl. Exh. 2 at 2.  The letter stated that unless Plaintiff obtained
3  the additional flood insurance coverage himself by April 15, 2010, BHLS would purchase it
4  for him at his expense, at a cost of approximately $799.22.  Devlin Decl. Exh. 2 at 1.  The
5  letter also informed Plaintiff that any insurance that BHLS purchased might be obtained
6  "through agencies that are affiliates of Bank of America, N.A.," and that BANA or its
7  affiliates might receive a commission or other compensation for obtaining the coverage.  *Id.* at
8  3.  In addition, the letter warned Plaintiff that the premium for such lender-placed insurance
9  "may be more expensive and will likely provide less coverage than . . . you can obtain on your
10 own."  *Id.*

11 On March 25, 2010, BHLS sent Plaintiff a follow-up letter that again informed him
12 that the flood insurance coverage on his property needed to be increased.  Compl. ¶ 18; *see*
13 *also* Devlin Decl. Exh. 3.  That letter once again informed Plaintiff that any lender-placed
14 insurance could be more expensive than coverage Plaintiff might obtain on his own, and
15 encouraged Plaintiff to purchase the flood insurance coverage on his own "to avoid incurring
16 the cost of our buying a Lender-Placed Insurance policy."  Devlin Decl. Exh. 3 at 2-3.

17 On April 20, 2010, after Plaintiff failed to purchase the additional coverage himself,
18 Bank of America sent him a third letter informing him that it had purchased the additional
19 flood insurance itself at a cost of $799.22, which would be charged to his account.  Compl. ¶
20 20; *see also* Devlin Decl. Exh. 4.  That letter once again informed Plaintiff that the purchase
21 price of lender-placed insurance was "typically a much higher cost" than coverage that
22 Plaintiff could purchase on his own, and encouraged Plaintiff "to contact an insurance
23 agent/company to obtain the necessary additional flood insurance coverage as soon as
24 possible."  Devlin Decl. Exh. 4 at 2.  The letter further informed Plaintiff that if he purchased
25 additional flood insurance coverage on his own and provided proof to BHLS of his flood
26 policy, BHLS would then cancel the lender-placed policy and refund to Plaintiff any premium

DEFENDANTS' MOTION TO DISMISS AND SUPPORTING
MEMORANDUM. - 5
CASE NO. 2:11-CV-00988 MJP
116589.0328/5108669v1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON  98101-2338
206.223.7000 FAX: 206.223.7107

1  paid for lender-placed coverage postdating the effective date of Plaintiff's policy. *Id.* at 3.

2  On December 20, 2010, BHLS allegedly sent Plaintiff another letter informing him that it intended to renew the flood insurance policy that it had purchased on his property unless Plaintiff purchased an acceptable policy himself. Compl. ¶ 22; *see also* Devlin Decl. Exh. 5. Again, the letter encouraged Plaintiff to obtain additional flood insurance on his own. Devlin Decl. Exh. 5 at 1. On February 8, 2011, BHLS informed Plaintiff that it had purchased a new flood insurance policy for his property at a cost of $985.18. Compl. ¶ 23; *see also* Devlin Decl. Exh. 6. That letter, like the previous letters, urged Plaintiff "to contact an insurance agent/company to obtain the necessary additional flood insurance coverage as soon as possible."[5] Devlin Decl. Exh. 6 at 2.

### B.   The National Flood Insurance Act ("NFIA").

The NFIA, while not controlling here, is worthwhile to review as it establishes a **minimum** flood insurance coverage requirement incorporated in the Plaintiff's Deed of Trust – and provides useful background for the language used in the Deed of Trust.

In 1968, Congress enacted the NFIA in response to "an increasing burden on the Nation's resources" from the personal hardships and economic distress suffered by homeowners as a result of flooding from sources such as Hurricane Betsy, which flooded New Orleans in 1965. 42 U.S.C. § 4001(a); *see also* H.R. Rep. No. 90-1585, 1968 U.S.C.C.A.N. 2873, 2966-67 (June 25, 1968) (explaining a flood insurance program was needed because communities "become completely immobilized following a major flood" and existing disaster relief was "inadequate to provide for the necessary restoration of heavily

---

[5] Plaintiff alleges at the time BHLS renewed the lender-placed insurance coverage, he "continued to maintain a separate flood insurance policy on his home, and previously had increased" the coverage under that policy to $250,000. Compl. ¶ 24. Notably, Plaintiff does not allege that he ever actually informed BHLS that he had increased his coverage. In fact, once BHLS received notice that Plaintiff had purchased acceptable coverage on his own, it cancelled the lender-placed policy and refunded the premium paid for coverage postdating the effective date of Plaintiff's own policy. Though BHLS informed Plaintiff that it had done so on April 17, 2011 – nearly a month before this action was filed – Plaintiff has omitted this fact from the Complaint. *See* Devlin Decl. Exh. 7.

DEFENDANTS' MOTION TO DISMISS AND SUPPORTING
MEMORANDUM. - 6
CASE NO. 2:11-CV-00988 MJP

116589.0328/5108669v1

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

damaged areas"). Most notably, the NFIA prohibits a federally-regulated lending institution such as Bank of America, N.A. from making, increasing, extending, or renewing

> any loan secured by improved real estate or a mobile home located or to be located in an area that has been identified . . . as an area having special flood hazards . . . unless the building or mobile home and any personal property securing such loan is covered for the term of the loan by flood insurance in an amount **at least** equal to the outstanding principal balance of the loan or the maximum limit of coverage made available under the [NFIA] with respect to the particular type of property, whichever is less.

42 U.S.C. § 4012a(b)(1) (emphasis added). A lender that extends credit for a property located in a special flood hazard area without requiring the purchase of mandatory flood insurance is subject to civil penalties under the NFIA, as is a lender that fails to provide notice of insufficient coverage or to purchase insurance when the borrower does not. *Id.* § 4012a(f).

The NFIA requires that flood insurance coverage for a single-family home securing a mortgage loan (the type of dwelling that secured Plaintiff's property) be "in an amount **at least** equal to the outstanding principal balance of the loan or the maximum limit of coverage made available under the Act with respect to the particular type of property, whichever is less." 42 U.S.C. § 4012a(b)(1) (emphasis added). The maximum coverage that a lender may require for a single-family home is $250,000. 42 U.S.C. § 4013(b)(2); 44 C.F.R. § 61.6. The Federal Emergency Management Agency, which is responsible for implementing the federal government's National Flood Insurance Program (which was created by the NFIA), has recommended that properties be insured to their full replacement value as "[a] sound flood insurance risk management approach" under which "the lender and borrower are both better protected." *See* Federal Emergency Management Agency, National Flood Insurance Program: Mandatory Purchase of Flood Insurance Guidelines 27-28 (September 2007), *available at* http://www.fema.gov/library/viewRecord.do?id=2954.

DEFENDANTS' MOTION TO DISMISS AND SUPPORTING MEMORANDUM. - 7
CASE NO. 2:11-CV-00988 MJP

116589.0328/5108669v1

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

### III. ISSUE

Whether the Court should dismiss Plaintiff's claims with prejudice for failure to state a claim against Defendants upon which relief can be granted.

### IV. EVIDENCE RELIED UPON

This Motion to Dismiss relies upon the allegations in the Complaint and the undisputed documents relied upon therein, which the Court may consider in ruling upon this Motion.[6]

### V. ARGUMENT

*A. Legal Standard*

A complaint, or any cause of action alleged therein, must be dismissed when it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). This standard is met where a complaint fails to allege facts which, if true, would provide adequate grounds to entitle a plaintiff to relief. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007). A complaint containing mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" does not state a claim. *Id.* Rather, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations and emphasis omitted). Where the complaint lacks a facts sufficient to support a "cognizable legal theory," it must be dismissed. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988).

In addition, where it is clear amendment would be futile, the court may dismiss the Complaint without leave to amend. *See Havas v. Thorton*, 609 F.2d 372 (9th Cir. 1979). Here, as discussed below, Plaintiff has not "nudged" his claims "across the line from

---

[6] The Court may consider documents referenced in the Complaint and which form the basis of the claims therein without converting this motion into one for summary judgment. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (court may consider documents to which the complaint "refers extensively" or which "form the basis of the plaintiffs' claim").

DEFENDANTS' MOTION TO DISMISS AND SUPPORTING MEMORANDUM. - 8
CASE NO. 2:11-CV-00988 MJP
116589.0328/5108669v1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

conceivable to plausible." *Iqbal*, 129 S.Ct. at 1951 (*citing Twombly*, 550 U.S. at 570, 127 S.Ct. 1955). Accordingly, and because no amendment will cure his claims' deficiencies, the Court should grant Defendants' Motion to Dismiss without leave to amend.

### B. *Plaintiff's Claims in Counts I and IV Must Be Dismissed Because Plaintiff's Deed of Trust Permitted BHLS to Require Additional Flood Insurance.*

Counts I and IV of Plaintiff's Complaint, which purport to state claims for breach of contract and declaratory judgment, respectively, rise or fall on Plaintiff's reading of his Deed of Trust. Plaintiff claims that the Deed of Trust only required him to maintain flood insurance in the amount of the unpaid principal balance of his loan, and that BHLS could not require him to maintain flood insurance in greater amounts. Compl. ¶¶ 37-38. The plain language of Plaintiff's contract, however, demonstrates the contrary.

#### 1. The Deed of Trust Permits BHLS to Require Flood Insurance "in the amounts and for the periods" it Determines.

Plaintiff's Deed of Trust expressly permits BHLS to determine the amount of flood insurance coverage required on the property. "If the language is clear and unambiguous, the court must enforce the contract as written; it may not modify the contract or create ambiguity where none exists." *Lehrer v. State Dept. of Social & Health Servs.*, 101 Wash. App. 509, 515-16, 5 P.3d 722, 726 (Wash. App. 2000). Moreover, where the terms of a contract are unambiguous, its proper interpretation is a matter of law which may be resolved on a motion to dismiss. *Bedrosian v. Tenet Healthcare Corp.*, 208 F.3d 220 (9th Cir. 2000).

Under the Deed of Trust, the borrower is required to "insure all improvements on the Property, whether now in existence or subsequently erected, against **any hazards, casualties, and contingencies**, including fire, for which Lender requires insurance . . . **in the amounts and for the periods that Lender requires**." *See* Devlin Decl. Exh. 1 at 3, ¶ 4 (emphasis added). The Deed of Trust does not limit this discretion to certain types of hazards, casualties, or contingencies. Rather it applies, by its clear terms to *any* hazards, casualties, or

DEFENDANTS' MOTION TO DISMISS AND SUPPORTING
MEMORANDUM. - 9
CASE NO. 2:11-CV-00988 MJP

116589.0328/5108669v1

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

contingencies – including floods.

Floods are a well-known "hazard" to real estate, and the ordinary meaning of "hazard" – "a potential risk or danger" – unquestionably encompasses flooding. Merriam-Webster's Collegiate Dictionary 572 (11th ed. 2003) (defining "hazard" as "a source of danger" or "a chance event; accident")[7]; *cf. Nishikawa v. U.S. Eagle High, LLC*, 138 Wash. App. 841, 849, 158 P.3d 1265, 1268 (2007) ("When interpreting a contract, we give undefined terms their plain, ordinary, and popular meaning."). This is the conclusion reached by the court in *Custer v. Homeside Lending, Inc.*, 858 So.2d 233 (Ala. 2003). In that case, plaintiffs' mortgage required them to insure the property "against loss by fire **and other hazards, casualties, and contingencies** in such amounts and for such periods as may be required by the Mortgagee" – language remarkably similar to the language of Plaintiff's Deed of Trust. *See id.* at 237 (emphasis added).

While the *Custer* plaintiffs' original lender did not require **any** flood insurance, after the defendant purchased the loan it informed plaintiffs that they would be required to purchase flood insurance for the property, and when plaintiffs failed to do so, purchased it for them and charged them for the coverage. *Id.* at 237-40. There, as here, the plaintiffs alleged that the defendant "breached the mortgage agreement . . . by force-placing flood insurance in amounts that exceeded outstanding mortgage loan balances." *Id.* at 240. The court rejected that argument, concluding "contractually, [the defendant] was given the right to force-place a higher amount, under the provisions of the mortgage authorizing it to force-place insurance against loss 'in such amounts' as it might choose to require." *Id.* at 246-47.

According to the clear and unambiguous language of Plaintiff's Deed of Trust, Defendants have the right to choose the amount of flood insurance on the property, within the

---

[7] Floods are also casualties or contingencies. *See* Merriam-Webster's Collegiate Dictionary 193 (11th ed. 2003) (defining "casualty" as a "serious or fatal accident: disaster"); *id*. at 270 (defining "contingency" as "an event (as an emergency) that may be or is not certain to occur").

DEFENDANTS' MOTION TO DISMISS AND SUPPORTING
MEMORANDUM. - 10
CASE NO. 2:11-CV-00988 MJP

116589.0328/5108669v1

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

limits set by the NFIA. This is precisely what happened here.[8]

### 2. The Deed of Trust Does Not Establish the Maximum Amount of Flood Insurance Coverage as Equal to the Outstanding Principal Balance of Plaintiff's Loan.

Plaintiff, in an effort to escape the unambiguous language of his Deed of Trust, instead relies upon the sentence in paragraph 4 that requires Plaintiff to "insure all improvements on the Property . . . against loss by floods to the extent required by the Secretary." *See* Compl. ¶ 15; *see also* Devlin Decl. Exh. 1 at 3, ¶ 4. "The Secretary" refers to the Secretary of Housing and Urban Development ("HUD"). Compl. ¶ 15; *see also* Devlin Decl. Exh. 1 at 2, ¶ 2. According to Plaintiff, "the extent [of flood insurance] required by the Secretary" is the outstanding principal balance of his loan – no more and no less. There are two key errors in Plaintiff's interpretation, which require that the argument be rejected as a matter of law.

First, Plaintiff's interpretation renders this second sentence directly contradictory to the preceding sentence, which requires Plaintiff to insure against "**any hazards**, casualties, and contingencies . . . in the amounts and for the periods that Lender requires." It is a cardinal principle of contract interpretation, however, that a contract should be construed to "in a manner that gives effect to all the contract's provisions," and "clauses that seem to conflict" should be harmonized. *Nishikawa*, 138 Wash. App. at 849, 158 P.3d at 1268.

The two sentences of Plaintiff's Deed of Trust that deal with flood insurance are not, in fact, contradictory, and are easily harmonized. The first provision, requiring Plaintiff to insure against all hazards for which the lender requires insurance, does not require Plaintiff to carry any particular amount of insurance against such hazards – it merely reserves to

---

[8] A United States Magistrate Judge in Pennsylvania recently concluded that language similar to Plaintiff's Deed of Trust was ambiguous. *Wulf v. Bank of Am., N.A. et al.*, No. 10-5176, Report & Recommendation at 8 (E.D. Pa. Apr. 15, 2011). The *Wulf* defendants have filed an Objection to the Magistrate's Report, and the District Judge in *Wulf* has held her own hearing on the motion to dismiss in that case, though she has not yet issued an opinion on the motion. For the reasons set forth in this memorandum, Defendants believe the Magistrate's conclusion was erroneous and should not be followed here.

DEFENDANTS' MOTION TO DISMISS AND SUPPORTING MEMORANDUM. - 11
CASE NO. 2:11-CV-00988 MJP
116589.0328/5108669v1

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

Defendants the ability to determine such an amount. *Cf. Custer*, 858 So. 2d at 246 (where mortgage required borrower to maintain hazard insurance "of such type or types and amounts as the Mortgagee may from time to time require," lender had the right "to reduce the coverage to zero").  The second provision, however, incorporates the requirements of the NFIA by establishing a coverage **floor** for flood insurance:  Plaintiff must insure the property at least to the amount required by federal law, as set by the HUD Secretary.  But this latter sentence does not restrict Defendants' ability – granted in the first provision – to require Plaintiff to carry flood insurance in greater amounts such as replacement value.  To read the last sentence as **prohibiting** the lender from requiring more than the NFIA minimum would prevent the lender from requiring coverage in amounts, such as replacement value, that might better protect both the borrower's and the lender's interest in the property. Such a construction has nothing to commend it as a matter of reason or policy.

The second error in plaintiff's argument is that his reading of HUD's flood insurance regulations, found at 22 C.F.R. § 203.16a, ignores the plain language of those regulations, which merely provide that "flood insurance must be maintained . . . in an amount **at least equal to** either the outstanding balance of the mortgage, less estimated land costs, or the maximum amount of the NFIP insurance available with respect to the property improvements, whichever is less." 22 C.F.R. § 203.16a(c) (emphasis added).[9]  Thus, the regulation – and Plaintiff's Deed of Trust – establishes a **minimum** amount of flood insurance required. *See Hayes v. Wells Fargo Home Mortg.*, No. 06-1791, 2006 WL 3193743, *4 (E.D. La. Oct. 31, 2006) ("The 'at least' language indicates that this requirement is a minimum with which the

---

[9] Plaintiff quotes HUD's website for HUD's flood insurance requirements, and cites HUD's actual regulations only in passing, presumably in the belief that the website language is more advantageous for him than HUD's regulatory language.  *See* Compl. ¶ 16.  Like its regulations, though, HUD's website makes clear that the outstanding balance of the loan is a minimum amount of flood insurance coverage required, providing that such coverage "*need not* exceed the outstanding principal balance of the loan" – not, as Plaintiff suggests, that it *must not* exceed that amount.  *See* http://www.hud.gov/offices/cpd/environment/review/floodinsurance.cfm (last visited June 14, 2011) (emphasis added).

DEFENDANTS' MOTION TO DISMISS AND SUPPORTING
MEMORANDUM. - 12
CASE NO. 2:11-CV-00988 MJP

116589.0328/5108669v1

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

1   lender must comply and does not prohibit a contractual agreement whereby the lender may
2   require coverage in an amount greater than the balance of the loan secured by the property
3   vulnerable to flooding."). Plaintiff's interpretation would turn the regulation on its head,
4   transforming this minimum requirement into the maximum of what a lender may require. The
5   NFIA and its implementing regulations, however, separately establish a maximum flood
6   insurance limit of $250,000 for single-family residences. *See* 42 U.S.C. § 4013(b)(2); 44
7   C.F.R. § 61.6.

8   BHLS accordingly acted within its clear contractual rights by requiring Plaintiff to
9   carry flood insurance in an amount equal to the replacement value of his property.

10  **3.     BHLS Had the Contractual Right to Lender-Place Additional Insurance.**

11  When BHLS informed Plaintiff that he needed to carry additional flood insurance, he
12  did not, at first, purchase the additional flood insurance himself. Compl. ¶¶ 20, 23. When
13  Plaintiff did allegedly purchase the additional insurance, he did not promptly inform BHLS of
14  his purchase. *Id.* ¶ 24. Without notice that Plaintiff had purchased the additional insurance
15  coverage, BHLS was permitted under the clear terms of the Deed of Trust, the NFIA, and
16  HUD's regulations to purchase the insurance for him and charge it to his account.[10]

17  Plaintiff's Deed of Trust states clearly that the lender has the right to "pay whatever is
18  necessary to protect the value of the Property" and that such amounts "shall become an
19  additional debt of Borrower and be secured by this Security Instrument" if Plaintiff does not
20  make the "payments required by paragraph 2" – including payments for flood insurance – or
21  does not perform "covenants and agreements" included in the Deed of Trust. Devlin Decl.
22  Exh. 1 at 4, ¶ 7. Because Plaintiff did not maintain flood insurance "in the amounts and for
23  the periods that Lender requires" (and when he did purchase the additional insurance, he did

---

[10] As previously noted, once BHLS finally received notice that Plaintiff had purchased acceptable coverage on his own, it cancelled the second lender-placed policy and refunded the premium paid for the coverage postdating the effective date of Plaintiff's own policy. *Supra* n.3.

DEFENDANTS' MOTION TO DISMISS AND SUPPORTING
MEMORANDUM. - 13
CASE NO. 2:11-CV-00988 MJP
116589.0328/5108669v1

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

not notify BHLS) BHLS acted within its clear contractual rights in purchasing the additional insurance and charging it to Plaintiff. Plaintiff's breach of contract claim therefore fails and should be dismissed with prejudice.

## C. Plaintiff's Claim for Breach of the Covenant of Good Faith and Fair Dealing Fails.

Plaintiff's claim for breach of the covenant of good faith and fair dealing should be dismissed for the same reasons set forth above and because Plaintiff fails to allege Defendants denied Plaintiff the "full benefit of performance" under his Deed of Trust, or somehow interfered with his own performance. Under Washington law, the implied duty of good faith and fair dealing "obligates the parties to cooperate with each other so that each may obtain the full benefit of performance." *Badgett v. Security State Bank*, 116 Wash. 2d 563, 569, 807 P.2d 356, 360 (1991). It also "casts on each party a duty not to interfere with the other party's performance." *State v. Trask*, 91 Wash. App. 253, 272-73, 957 P.2d 781, 791 (1998). This "duty to cooperate exists only in relation to performance of a specific contract term," and "[a]s a matter of law, there cannot be a breach of the duty of good faith when a party simply stands on its rights to require performance of a contract according to its terms." *Badgett*, 116 Wash. 2d at 570, 807 P.2d at 360. As set forth in Section I *supra*, BHLS merely exercised the discretion expressly granted it by the terms of Plaintiff's Deed of Trust. As such, it cannot have breached the implied covenant of good faith and fair dealing. This point alone requires dismissal of Count II.

Even assuming, however, that BHLS had not acted in accordance with the contract, Plaintiff must demonstrate that BHLS somehow denied him "the full benefit of performance," *id.* at 569, 807 P.2d at 360, or "interfere[d] with [Plaintiff's] performance," *Trask*, 91 Wash. App. at 272-73, 957 P.2d at 791. Here, Plaintiff's Complaint fails to make any allegations that BHLS in any way denied Plaintiff "the full benefit of performance."

What BHLS allegedly did was require insurance in the same amount as Plaintiff's

DEFENDANTS' MOTION TO DISMISS AND SUPPORTING
MEMORANDUM. - 14
CASE NO. 2:11-CV-00988 MJP

116589.0328/5108669v1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

homeowners insurance – that is, an amount equal to the replacement cost of Plaintiff's home. This was hardly "bad faith" – by doing so BHLS made sure that Plaintiff **himself** had the appropriate protection in the event of a catastrophic flood. This is because flood insurance that covers only the amount of the outstanding loan balance provides no funds for a borrower to rebuild and often leaves insufficient funds such that both borrower and lender are harmed. Indeed, the Federal Emergency Management Agency ("FEMA") policy is that flood insurance equal to the full replacement value of the property should be maintained. *See* Federal Emergency Management Agency, National Flood Insurance Program: Mandatory Purchase of Flood Insurance Guidelines 27-28 (September 2007), *available at* http://www.fema.gov/library/viewRecord.do?id=2954 ("A sound flood insurance risk management approach follows the insurance industry practice of insuring buildings to full [replacement cost value (RCV)]. . . . By insuring buildings to the full RCV, the lender and borrower are both better protected."); *cf. Custer*, 858 So.2d at 247-48 (lender did not abuse discretion in force-placing flood insurance sufficient to protect borrower's insurable interest in property). By following this federal guidance, BHLS did not deny Plaintiff the "full benefit of performance," rather it merely required Plaintiff to carry flood insurance in an amount that would protect **his own** insurable interest in the property.

For these reasons, and for the reasons set forth in Section I above, this Court should dismiss Count II with prejudice.

### D.  *Plaintiff's Claim Under the CPA Must Also Be Dismissed.*

Plaintiff's CPA claim is based in large part on the same erroneous reading of Plaintiff's Deed of Trust as his other claims. *See* Compl. ¶ 53. The CPA claim therefore fails for essentially the same reasons as those claims. To the extent this claim does not rest upon Plaintiff's misreading of his Deed of Trust, it depends upon Defendants' alleged acceptance of a commission or other compensation in connection with the lender-placement of flood

DEFENDANTS' MOTION TO DISMISS AND SUPPORTING
MEMORANDUM. - 15
CASE NO. 2:11-CV-00988 MJP

116589.0328/5108669v1

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON  98101-2338
206.223.7000 FAX: 206.223.7107

insurance. *See* Compl. ¶¶ 54, 56. In addition to being factually wrong,[11] this theory also does not entitle Plaintiff to relief under the CPA.

In order to prevail in a private suit under the CPA, a plaintiff must show all five of the following elements: "(1) an unfair or deceptive act or practice, (2) that occurs in trade or commerce, (3) a public interest; (4) injury to the plaintiff in his or her business or property, and (5) a causal link between the unfair or deceptive act and the injury suffered." *Indoor Billboard/Washington, Inc., v. Integra Telecom of Washington, Inc.*, 162 Wash. 2d 59, 74 (2007) (citing *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778, 784-85 (1986)). Plaintiff's CPA claim fails on the very first prong, as he cannot show any unfair or deceptive act or practice by Defendants.

To show an unfair or deceptive trade practice, Plaintiff must set forth facts showing that Defendants engaged in conduct that has the tendency or capacity "to deceive a substantial portion of the purchasing public." *Indoor Billboard*, 162 Wash. 2d. at 74-75. As already noted, BHLS had the authority under Plaintiff's Deed of Trust to require Plaintiff to carry additional flood insurance and to purchase an additional flood insurance policy itself if necessary. *Supra* section I. Thus, insofar as Plaintiff's CPA claim is premised upon the alleged breach of contract that forms the basis for Plaintiff's claims in Counts I and IV, it also fails.[12]

To the extent Plaintiff's CPA claim is not based upon this alleged breach of contract, but upon Defendants' purported acceptance of a commission or other compensation in connection with lender-placed, flood insurance, it still cannot survive because nothing about Defendants' alleged conduct had any tendency to deceive the public. Consistent with its

---

[11] Defendants expressly deny that they received any commission in connection with the lender-placed insurance purchased on Plaintiff's behalf – as is indicated on the final pages of both Exhibits 4 and 6 to the Devlin Declaration, which depict the fees and premiums assessed to Plaintiff for the coverage.

[12] In addition, even assuming Plaintiff's interpretation of his Deed of Trust is correct, BHLS's breach could not independently give rise to a CPA claim. "[B]reach of a private contract does not establish a [CPA] violation." *Burbo v. Harley C. Douglass, Inc.*, 125 Wash. App. 684, 701, 106 P.3d 258, 267 (2005).

DEFENDANTS' MOTION TO DISMISS AND SUPPORTING MEMORANDUM. - 16
CASE NO. 2:11-CV-00988 MJP
116589.0328/5108669v1

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

authority under Plaintiff's Deed of Trust, in the February 25, 2010 letter in which it requested that Plaintiff increase his flood insurance coverage, BHLS stated that it would not purchase a lender-placed insurance policy for his loan **unless Plaintiff himself did not obtain the necessary coverage himself** before April 15, 2010. Devlin Decl. Exh. 2 at 1. BHLS urged Plaintiff "to contact an insurance agent/company" in order to obtain the coverage, but did not tell him that he needed to purchase the insurance from any company in particular. *Id.* at 2. Indeed, Defendants Plaintiff specifically warned Plaintiff that BANA or its affiliates could receive a fee or other compensation in connection with any lender-placed insurance, and that the premiums for lender-placed insurance might "be more expensive [than coverage] that you can obtain on your own."[13] *Id.* at 3.

Several weeks later, BHLS **again cautioned** Plaintiff that it would purchase lender-placed insurance **only** if he did not provide evidence of acceptable coverage from another insurance company and warned him that insurance purchased by BHLS might be more expensive than coverage he could obtain on his own. *See generally* Devlin Decl. Exh. 3. BHLS even provided Plaintiff with an estimate of the cost of lender-placed insurance. *Id.* at 1. Only then did BHLS purchase the additional coverage itself.[14]

In the letter informing Plaintiff of the lender-placement of insurance on his property, BHLS explained to Plaintiff that even though BHLS had purchased additional insurance to protect his property, upon receiving notification that he had purchased additional flood insurance coverage on his own, BHLS would cancel the lender-placed policy and refund to Plaintiff any premium paid for lender-placed coverage postdating the effective date of

---

[13] Courts in this district have repeatedly dismissed analogous claims that businesses violate the CPA when they charge a fully-disclosed fee. *Riensche v. Cingular Wireless LLC*, No. C06-1325-Z, 2009 WL 3169210, **3-4 (W.D. Wash. Oct. 2, 2009) (granting motion to dismiss CPA claim where fees in question had been disclosed); *Lowden v. T-Mobile USA, Inc.*, No. C05-1482-MJP, 2009 WL 537787, *3 (W.D. Wash. Feb. 18, 2009) (same); *Smale v. Cellco P'ship*, 547 F. Supp. 2d 1181, 1188-89 (W.D. Wash. 2008) (same).

[14] Plaintiff does **not** contend that the flood insurance BHLS purchased exceeded the market rate for such coverage – nor can he. The cost of the insurance charged to Plaintiff was well within that rate.

DEFENDANTS' MOTION TO DISMISS AND SUPPORTING MEMORANDUM. - 17
CASE NO. 2:11-CV-00988 MJP
116589.0328/5108669v1

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

Plaintiff's policy. Devlin Decl. Exh. 4 at 3.

Several months later, in December 2010, as the first lender-placed policy was nearing its expiration, BHLS again reached out to Plaintiff, encouraging him to obtain his own coverage and warning him of the costs of lender-placed insurance. *See* Devlin Decl. Exh. 5. Again, Plaintiff failed to obtain the coverage on his own from his choice of carrier, and only then did BHLS purchase the insurance itself.[15]

In short, Defendants gave Plaintiff multiple opportunities to purchase additional flood insurance coverage on his own; notified him numerous times that BHLS intended to purchase lender-placed flood insurance if he did not purchase it himself; repeatedly informed him that the cost of that insurance could exceed the cost of insurance he could obtain on his own; told him several times that Defendants or their affiliates might receive compensation if insurance was lender-placed; gave him an estimate of the cost of lender-placed insurance before any insurance was lender-placed; and even game him the opportunity to purchase insurance on his own **after** additional insurance was lender-placed. Plaintiff nonetheless chose not to purchase the additional coverage himself. While Plaintiff may be unsatisfied with **his choice** to ignore Defendants' letters and warnings – and his contractual obligations – he cannot claim that Defendants engaged in any conduct that had a tendency or capacity "to deceive a substantial portion of the purchasing public," *Indoor Billboard*, 162 Wash. 2d. at 74-75, and he cannot state a CPA claim.

---

[15] Plaintiff subsequently provided BHLS with proof that he had purchased acceptable coverage on his own, and BHLS then cancelled the lender-placed policy and refunded the premium for that policy in part. *See* Devlin Decl. Exh. 7. This was done prior to the filing of this suit. *See id.*

DEFENDANTS' MOTION TO DISMISS AND SUPPORTING
MEMORANDUM. - 18
CASE NO. 2:11-CV-00988 MJP
116589.0328/5108669v1

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

## VI. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint of Plaintiff Eric Skansgaard with prejudice for failure to state a claim upon which relief can be granted, and grant such other relief as it deems just and equitable.

DATED: June 20, 2011

                                      LANE POWELL PC

                                      By s/John S. Devlin
                                          John S. Devlin III, WSBA No. 23988
                                          Jacob M. Downs, WSBA No. 37982
                                          1420 Fifth Avenue, Suite 4100
                                          Seattle, WA  98101-2338
                                          Telephone: (206) 223-6280
                                          Fax:  (206) 223-7101
                                          E-mail:  devlinj@lanepowell.com

Of Counsel:

GOODWIN PROCTER LLP

John C. Englander (*pro hac vice pending*)
Matthew Lindenbaum (*pro hac vice pending*)
53 State Street
Boston, Massachusetts  02109
Tel.:  617.570.1000
Fax:  617.523.1231
E-mail:  jenglander@goodwinprocter.com
Email:  mlindenbaum@goodwinprocter.com

                                          Attorneys for Defendants
                                          BANK OF AMERICA, N.A. and
                                          BAC HOME LOANS SERVICING, L.P.

DEFENDANTS' MOTION TO DISMISS AND SUPPORTING MEMORANDUM. - 19
CASE NO. 2:11-CV-00988 MJP

116589.0328/5108669v1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON  98101-2338
206.223.7000 FAX: 206.223.7107

## **CERTIFICATE OF SERVICE**

Pursuant to RCW 9.A.72.085, the undersigned certifies under penalty of perjury under the laws of the State of Washington, that on the 20th day of June, 2011, the document attached hereto was presented to the Clerk of the Court for filing and uploading to the CM/ECF system. In accordance with their ECF registration agreement and the Court's rules, the Clerk of the Court will send e-mail notification of such filing to the following persons:

Beth E. Terrell, WSBA #26759
Michael D. Daudt, WSBA #25690
Terrell Marshall Daudt & Willie PLLC
936 N 34th Street, Suite 400
Seattle, WA  98103-8869

Phone: (206) 816-6603
Fax: (206) 350-3528
Email: bterrell@tmdwlaw.com
       mdaudt@tmdlaw.com

Executed on 20th day of June, 2011, at Seattle, Washington.

*s/Leah Burrus*
Leah Burrus

DEFENDANTS' MOTION TO DISMISS AND SUPPORTING MEMORANDUM. - 20
CASE NO. 2:11-CV-00988 MJP

116589.0328/5108669v1

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON  98101-2338
206.223.7000 FAX: 206.223.7107