1

THE HONORABLE ROBERT J. BRYAN

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8

9

10

ERIC SKANSGAARD, as an individual and as a
representative of the classes,

Case No. 2:11-cv-00988 RJB

11

12

Plaintiff,

**PLAINTIFF'S REPLY
MEMORANDUM OF LAW IN
FURTHER SUPPORT OF MOTION
FOR CLASS CERTIFICATION**

13

v.

14

BANK OF AMERICA, N.A., and BAC HOME
LOANS SERVICING, L.P.,

**ORAL ARGUMENT REQUESTED**

15

Defendants.

**NOTE ON MOTION CALENDAR:
September 27, 2013**

16

17

*REDACTED*

18

19

20

21

22

23

24

25

26

27

PLAINTIFF'S REPLY MEMORANDUM
OF LAW IN FURTHER SUPPORT OF MOTION FOR CLASS
CERTIFICATION -i-
CASE No. 2:11-cv-00988 RJB

# **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

ARGUMENT ..........................................................................................................................6

I.    THE BREACH OF PARAGRAPH 4 OVER-INSURANCE CLASS SHOULD BE CERTIFIED ...........6

    A.    The Claims Asserted by the Breach of Paragraph 4 Over-Insurance Class Hinge on the Interpretation of a Uniform Covenant in a Form Contract ....................6

    B.    Extrinsic Evidence Specific to Individual Transactions Does Not Aid the Interpretation of a Form Contract ...........................................................................8

    C.    BoA's Merits Arguments Are Not a Proper Basis for Opposing Class Certification ..........................................................................................................10

    D.    Plaintiff Is Typical of the Paragraph 4 Over-Insurance Class Members ............11

II.   THE KICKBACK CLASS SHOULD BE CERTIFIED ...........................................................14

    A.    BoA's Liability For Kickbacks Has Been Raised Throughout the Litigation ......14

    B.    The Kickback Class Presents Common Issues that Predominate .........................17

        1.    ██████████████████████████████████████████
██████████████████████████ ......................................................17

        2.    BoA's Disclosures Regarding Commissions Were Uniform ....................21

        3.    Plaintiff is Typical of the Kickback Class ...............................................22

III.  THE BAIT AND SWITCH CLASS SHOULD BE CERTIFIED ................................................23

IV.   THE WASHINGTON CLASSES SHOULD BE CERTIFIED ...................................................28

V.    STATE LAW DIFFERENCES DO NOT PRECLUDE CERTIFICATION OF A NATIONAL CLASS ...30

    A.    The FHA Model Form Contains Uniform Covenants that Are Meant to be Uniformly Interpreted Nationwide Under Federal Law .......................................31

    B.    To the Extent that State Law Applies, Any Variations in State Contract Law Are Insignificant ...............................................................................................32

        1.    Breach of Contract ...................................................................................33

PLAINTIFF'S REPLY MEMORANDUM
OF LAW IN FURTHER SUPPORT OF MOTION FOR CLASS
CERTIFICATION -ii-
CASE NO. 2:11-cv-00988 RJB

NICHOLS KASTER PLLP
80 South Eighth Street, Suite 4600
Minneapolis, Minnesota  55402
TEL. 612.256 3200 • FAX 612.215 6870

2.      Breach of the Implied Covenant of Good Faith and Fair Dealing ......... 36

C.      Plaintiff Presents a Realistic Plan for Managing Any State Law Variations ..... 38

D.      Principles of Comity Do Not Preclude Nationwide Certification ................. 39

VI.     BOA'S PURPORTED AFFIRMATIVE DEFENSES DO NOT DEFEAT CLASS CERTIFICATION ... 40

A.      The Voluntary Payment Doctrine and "Mitigation of Damages" ................. 42

B.      Standing ............................................................................................... 43

C.      Estoppel by "Acceptance of Benefits" .................................................... 45

D.      Abstention ........................................................................................... 46

VII.    THE CLASS ACTION MECHANISM IS SUPERIOR TO INDIVIDUAL LAWSUITS ............ 46

CONCLUSION ........................................................................................................ 47

NICHOLS KASTER PLLP
80 South Eighth Street, Suite 4600
Minneapolis, Minnesota  55402
TEL. 612.256 3200 • FAX 612.215 6870

# TABLE OF AUTHORITIES

Cases

*Alcoa Steamship Co., Inc. v. Perez*, 424 F.2d 433 (1st Cir. 1970) ............................................. 43

*Allapattah Servs. v. Exxon Corp.*, 333 F.3d 1248 (11th Cir. 2003) ........................................ 6, 42

*Allen Saltzman Associates, Inc. v. Aileen, Inc.*, No. 84-1741, 1986 WL 5738 (N.D. Ill. 1986) . 16

*Alvarez v. Hill*, 518 F.3d 1152 (9th Cir. 2008) ................................................................. 15, 16

*Am. Timber & Trading Co. v. First Nat. Bank of Oregon*, 690 F.2d 781 (9th Cir. 1982) .......... 15

*Anderson v. Fel-Pro Chem. Products, L.P.*, No. 95-4604, 1996 WL 33410082 (N.D. Ill. Dec. 19, 1996) ............................................................................................................................. 36

*Arnett v. Bank of America, N.A.*, 874 F. Supp. 2d 1021 (D. Or. 2012) ..................................... 10

*Atl. Mut. Ins. Co. v. Metron Eng'g & Constr. Co.*, 83 F.3d 897 (7th Cir. 1996) ...................... 34

*Avilez v. Pinkerton Gov't Servs.*, 286 F.R.D. 450 (C.D. Cal. 2012) ....................................... 5, 41

*Berger v. Bank of Am., N.A.*, --- F. Supp. 2d ---, 2013 WL 1164497 (D. Mass. Mar. 21, 2013) ................................................................................................................................................ 28

*Berrien v. New Raintree Resorts, Int'l, LLC*, 276 F.R.D. 355 (N.D. Cal. 2011) ....................... 44

*Beyer v. Countrywide Home Loans Servicing LP*, No. 07-1512, 2008 WL 1791506 (W.D. Wash. 2008) ........................................................................................................................... 29

*Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975) ................................................................. 44

*Boise Tower Associates, LLC v. Washington Capital Joint Master Trust*, No. 03-141, 2006 WL 1749656 (D. Idaho June 22, 2006) .......................................................................................... 36

*Brand v. Nat'l Bank of Commerce*, 213 F.3d 636, 2000 WL 554193 (5th Cir. Apt. 11, 2000) ... 6

*Bybee Farms LLC v. Snake River Sugar Co.*, No. 06-5007, 2008 WL 3546506 (E.D. Wash. Aug. 8, 2008) ........................................................................................................................... 38

*Cameron v. E.M. Adams & Co.*, 547 F.2d 473 (9th Cir. 1976) ................................................ 35

*Cannon v. Wells Fargo Bank, N.A.*, 917 F. Supp. 2d 1025 (N.D. Cal. 2013) ...................... 23, 42

*Casey v. Citibank, N.A.*, 915 F. Supp. 2d 255 (N.D.N.Y. 2013) ....................................... 11, 40

PLAINTIFF'S REPLY MEMORANDUM
OF LAW IN FURTHER SUPPORT OF MOTION FOR CLASS
CERTIFICATION -iv-
CASE NO. 2:11-cv-00988 RJB

NICHOLS KASTER PLLP
80 South Eighth Street, Suite 4600
Minneapolis, Minnesota  55402
TEL. 612.256 3200 • FAX 612.215 6870

*Casida v. Sears Holding Corp.*, No. 11-1052, 2012 WL 3260423 (E.D. Cal. Aug. 8, 2012) .... 15

*Chamberlain v. Ford Motor Co.*, 402 F.3d 952 (9th Cir. 2005) ............................................. 47

*In re Checking Account Overdraft Litig.*, 275 F.R.D. 666 (S.D. Fla. 2011) ...................... 25, 38

*In re Checking Account Overdraft Litig.*, 281 F.R.D. 6667 (S.D. Fla. 2012) ..................... 25, 36

*CLN Props., Inc. v. Republic Servs., Inc.*, No. 09-1428, 2010 WL 5146734 (D. Ariz. Dec. 13, 2010) ........................................................................................................................................ 33

*Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976) .............. 46

*In re Colorado Spanish Peaks Ranch, Inc.*, 661 F.2d 759 (9th Cir. 1981) ............................... 26

*Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013) ................................................................ 19

*In re Conseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig.*, 270 F.R.D. 521 (N.D. Cal. 2010) ............................................................................................... 5, 17, 32, 33, 37, 39

*In re Conseco Life Ins. Co. LifeTrend Ins. Mktg. & Sales Practice Litig.*, 920 F. Supp. 2d 1050 (N.D. Cal. 2013) ........................................................................................................................ 9

*Cook Inc. v. Boston Scientific Corp.*, No. 01-9479, 2002 WL 335314 (N.D. Ill. Feb. 28, 2002) ..................................................................................................................................................... 38

*Cottle-Banks v. Cox Comms., Inc.*, No. 10-2133, 2013 WL 2244333 (S.D. Cal. May 21, 2013) ..................................................................................................................................................... 37

*Cowit v. CitiMortgage, Inc.*, No. 12-869, 2013 WL 940466 (S.D. Ohio Mar. 8, 2013) ............ 6

*Davis v. Bank of Am. Corp.*, No. 10-23, 2013 WL 141150 (S.D. Miss. Jan. 11, 2013) ....... 46, 47

*Dolfo v. Bank of America,* No. 11-02828, ECF No. 88 (S.D. Cal. June 3, 2013) ................... 44

*Dorsey v. N. Life Ins. Co.*, No. 04-0342, 2005 WL 2036738 (E.D. La. Aug. 15, 2005) ........... 38

*Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29 (E.D.N.Y. 2008) ......................................... 7

*Dwyer v. J.I. Kislak Mortg. Corp.*, 103 Wash. App. 542 (2000) ............................................. 29

*Easterling v. Connecticut Dep't of Correction*, 278 F.R.D. 41 (D. Conn. 2011) ................ 34, 35

*Ehreth v. Capital One Service, Inc.*, No. 08-0258, 2008 WL 3891270 (W.D. Wash. Aug. 19, 2008) ........................................................................................................................................ 16

PLAINTIFF'S REPLY MEMORANDUM
OF LAW IN FURTHER SUPPORT OF MOTION FOR CLASS
CERTIFICATION -v-
CASE NO: 2:11-cv-00988 RJB

**NICHOLS KASTER PLLP**
80 South Eighth Street, Suite 4600
Minneapolis, Minnesota  55402
TEL. 612.256.3200 • FAX 612.215.6870

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ..................................................................11

*Ellsworth v. U.S. Bank, N.A.*, 908 F. Supp. 1063 (N.D. Cal. 2012) ..........................................42

*In re Emery*, 317 F.3d 1064 (9th Cir. 2003) .........................................................................2, 9

*Enfield v. Old Line Life Ins. Co. of Am.*, 136 N.M. 398 (2004) ...............................................33

*Ewert v. eBay, Inc.*, Nos. 07-02198, 07-04487, 2010 WL 4269259 (N.D. Cal. Oct. 25, 2010) .........................................................................................................................2, 6, 8, 9, 25

*Fin. Pac. Leasing, LLC v. Prairie Emergency Servs., S.C.*, No. 12-7533, 2013 WL 3421884 (N.D. Ill. July 8, 2013) ..............................................................................................................35

*Fisher v. Ciba Specialty Chems. Corp.*, 238 F.R.D. 273 (S.D. Ala. 2006) ...............................18

*Flanagan v. Allstate Ins. Co.*, 242 F.R.D. 421 (N.D. Ill. 2007) ...............................................36

*Fosmire v. Progressive Max Ins. Co.*, 277 F.R.D. 622 (W.D. Wash. 2011) .............................33

*Fournigault v. Independence One Mortg. Corp.*, No. 94-1742, 2007 WL 1423866 (N.D. Ill. May 10, 2007) .......................................................................................................................7, 8

*Gordon v. Chase Home Finance, LLC*, No. 11-2001, 2013 WL 436445 (M.D. Fla. Feb. 5, 2013) .......................................................................................................................................10

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ..................................................5, 32

*Haroco, Inc. v. American Nat. Bank and Trust Co. of Chicago*, 121 F.R.D. 664 (N.D. Ill. 1988) .........................................................................................................................................7

*Heartland Comm., Inc. v. Sprint Corp.*, 161 F.R.D. 111 (D. Kan. 1995) .................................10

*Hofstetter v. Chase Home Finance, LLC*, 751 F. Supp. 2d 1116 (N.D. Cal. 2010) ...................24

*Hovenkotter v. SAFECO Ins. Co. of Ill.*, No. 09-0218, 2010 WL 3984828 (W.D. Wash. Oct. 11, 2010) .........................................................................................................................................33

*Idaho First Nat. Bank v. Bliss Valley Foods, Inc.*, 121 Idaho 266, 824 P.2d 841 (1991) ...........38

*Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc.*, 162 Wash. 2d 59 (2007) .................................................................................................................................29, 30

PLAINTIFF'S REPLY MEMORANDUM
OF LAW IN FURTHER SUPPORT OF MOTION FOR CLASS
CERTIFICATION -vi-
CASE NO. 2:11-cv-00988 RJB

**NICHOLS KASTER PLLP**
80 South Eighth Street, Suite 4600
Minneapolis, Minnesota  55402
TEL. 612.256 3200 • FAX 612.215 6870

*James D. Hinson Elec. Contracting Co., Inc. v. Bell S. Tel.*, 275 F.R.D. 638 (M.D. Fla. 2011) ..... ..................................................................................................................................................44

*Johnson v. Bank of Am., Corp.*, No. 11-1284, 2013 WL 664906 (W.D. Mich. Feb. 22, 2013) .46

*In re JPMorgan Chase Mortgage Modification Litig.*, 880 F. Supp. 2d 2250 (D. Mass. 2012) .36

*JTH Tax, Inc. v. H&R Block Eastern Tax Services, Inc.*, 128 F. Supp. 2d 926 (E.D. Va. 2001) ..................................................................................................................................................12

*Kelly v. City & County of San Francisco*, No. 05-1287, 2005 WL 3113065 (N.D. Cal. Nov. 21, 2005) ...........................................................................................................................................41

*Kennerly v. United States*, 721 F.2d 1252 (9th Cir. 1983) ....................................................14

*Kleiner v. First Nat. Bank of Atlanta*, 97 F.R.D. 683 (N.D. Ga. 1983) ...................................7

*Kolbe v. BAC Home Loans Servicing, L.P.*, 695 F.3d 111 (1st Cir. 2011) ...........3, 11, 24, 37, 40

*Lane v. Wells Fargo Bank, N.A.*, No. 12-04026, 2013 WL 3187410 (N.D. Cal. June 21, 2013) ..... ..............................................................................................................................................*passim*

*Lass v. Bank of America, N.A.*, 695 F.3d 129 (1st Cir. 2012) .......................22, 24, 37, 42

*Leyva v. Medline Industrs., Inc.*, 716 F.3d 510 (9th Cir. 2013) ...........................................19, 44

*Mathews v. PHH Mortgage Corp.*, 283 Va. 723 (2012) ...........................................................34

*Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581 (9th Cir. 2012) ...............................39

*Menagerie Productions v. Citysearch*, No. 08-4263, 2009 WL 3770668 (C.D. Cal. Nov. 9, 2009) ...............................................................................................................6, 9, 10, 25

*Morris v. Wells Fargo Bank, N.A.*, No. 11-474, 2012 WL 3929805 (W.D. Pa. Sept. 7, 2012) ..... ....................................................................................................................................11, 36, 37, 40

*Mortimore v. Fed. Deposit Ins. Corp.*, 197 F.R.D. 432 (W.D. Wash. 2000) ...........................7

*Munoz v. Giumarra Vineyards Corp.*, No. 09-00703, 2012 WL 2617553 (E.D. Cal. July 5, 2012) ...........................................................................................................................................16

*Murabayashi v. Honolulu Fed. Sav. & Loan Ass'n*, 848 F.2d 1243 (9th Cir. 1988) ...........2, 9

*National Federation of Blind v. Target Corp.*, 582 F. Supp. 2d 1185 (N.D. Cal. 2007) ...........14

NICHOLS KASTER PLLP
80 South Eighth Street, Suite 4600
Minneapolis, Minnesota  55402
TEL. 612.256 3200 • FAX 612.215 6870

*Ogburn v. Chase Home Finance, LLC*, No. 11-1856, 2011 WL 5599150 (N.D. Ga. Nov. 16, 2011) ........................................................................................................................................27

*Oregon-Pac. Forest Products Corp. v. Welsh Panel Co.*, 248 F. Supp. 903 (D. Or. 1965) ......36

*Overka v. Am. Airlines, Inc.*, 265 F.R.D. 14 (D. Mass. 2010) ..........................................38, 39

*Payne v. FujiFilm U.S.A., Inc.*, No. 07-385, 2010 WL 2342388 (D.N.J. May 28, 2010) ..........37

*Pfeifer v. Countrywide Home Loans, Inc.*, 211 Cal. App. 4th 1250 (2013) ..............................34

*In re Prudential Ins. Co. Am. Sales Prac. Litig.*, 148 F.3d 283 (3d Cir. 1998) ....................32, 39

*Quinteros v. Aurora Loan Servs.*, 740 F. Supp. 2d 1163 (E.D. Cal. 2010) ..........................26, 27

*Rannis v. Recchia*, 380 F. App'x. 646, 2010 WL 2124096 (9th Cir. May 27, 2010) ................29

*Republic Molding Corporation v. B.W. Photo Utilities*, 319 F.2d 347 (9th Cir. 1963) .............12

*Ritti v. U-Haul Int'l, Inc.*, No. 05-4182, 2006 WL 1117878 (E.D. Pa. Apr. 26, 2006) ............33

*Robinson v. Countrywide Credit Indus.*, No. 97-2747, 1997 WL 634502 (E.D. Pa. Oct. 8, 1997) ..................................................................................................................................24, 44

*Rodgers v. Central Locating Servs., Ltd.*, 412 F. Supp. 2d 1171 (W.D. Wash. 2006) .............40

*Rodriguez v. ACL Farms, Inc.*, No. 10-3010, 2010 WL 4683771 (W.D. Wash. Nov. 12, 2010) ................................................................................................................................................41

*Sacred Heart Health Systems, Inc. v. Humana Military Healthcare*, 601 F.3d 1159 (11th Cir. 2010) ..........................................................................................................................................6

*Sarvis v. General Dynamics Info. Tech, Inc.*, 663 F. Supp. 2d 883 (C.D. Cal. 2009) ..............18

*Schneider v. Bank of Am., N.A.*, No. 11-2953, 2012 WL 761975 (E.D. Cal. Mar. 6, 2012) ......47

*Schulken v. Washington Mutual Bank*, No. 09-02708, 2012 WL 28099 (N.D. Cal. Jan. 5, 2012) ..............................................................................................................................................6, 8

*In re Silverman*, 616 F.3d 1001 (9th Cir. 2010) ......................................................................40

*Skansgaard v. Bank of America, N.A.*, 896 F. Supp. 2d 944 (W.D. Wash. 2011) ...................29

*Smilow v. Southwestern Bell Mobile Systems, Inc.*, 323 F.3d 32 (1st Cir. 2003) ................6, 41

*Snyder v. HSBC Bank, USA, N.A.*, 873 F. Supp. 2d 1139 (D. Ariz. 2012) ..............................26

PLAINTIFF'S REPLY MEMORANDUM
OF LAW IN FURTHER SUPPORT OF MOTION FOR CLASS
CERTIFICATION -viii-
CASE NO. 2:11-cv-00988 RJB

**NICHOLS KASTER PLLP**
80 South Eighth Street, Suite 4600
Minneapolis, Minnesota  55402
TEL. 612.256 3200 • FAX 612.215 6870

*Starbuck v. City and County of San Francisco*, 556 F.2d 450 (9th Cir. 1977) .......................... 40

*Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67 (E.D.N.Y. 2004) ...................... 33, 35

*Sterling Sav. Bank v. Silverton Station, LLC*, No. 10-6121, 2010 WL 4718788 (D. Or. Nov. 15, 2010) .......................................................................................................... 26

*Survivor Prods. LLC v. Fox Broad. Co.*, No. 01-3234, 2011 WL 35829270 (C.D. Cal. June 12, 2001) ............................................................................................................ 12

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583 (N.D. Cal. 2010) ...................... 15

*Theiss v. County of Snohomish*, No. 12-1880, 2013 WL 2319397 (W.D. Wash. May 28, 2013) ............................................................................................................ 16

*Turnbull, et al. v. Bank of America, N.A., et al.*, No. BC493443 (Cal. Sup. Ct. Oct. 16, 2012) .46

*Ulbrich v. GMAC Mortgage, LLC*, No. 11-62424, 2012 WL 3516499 (S.D. Fla. Aug. 15, 2012) .......................................................................................................... 42, 44

*United States v. Two Bank Accounts Described as Bank Account In Amount of $197,524.99 Bank of Am. Seattle, Washington*, No. 06-4016, 2009 WL 803615 (D.S.D. Mar. 24, 2009) .... 36

*United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Service Workers Intern. Union, AFL-CIO, CLC v. ConocoPhillips Co.*, 593 F.3d 802 (9th Cir. 2010) ...................... 11

*Vedachalam v. Tata Consultancy Servs., Ltd.*, No. 06-0963, 2012 WL 1110004 (N.D. Cal. Apr. 12, 2012) ................................................................................................. 2, 9

*Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256 (11th Cir. 2009) ...................... 10, 41

*Verzani v. Costco Wholesale Corp.*, 641 F. Supp. 2d 291 (S.D.N.Y. 2009) ...................... 35

*In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124 (2d Cir. 2001) ...................... 35

*Wahl v. Am. Sec. Ins. Co.*, No. 08-00555, 2010 WL 1881126 (N.D. Cal. May 10, 2010) ......... 39

*Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288 (1st Cir. 2000) ...................... 45

*Williams v. Wells Fargo Bank, N.A.*, No. 11-21233, 2011 WL 4368980 (S.D. Fla. Sept. 19, 2011) .......................................................................................................... 43

*Williams v. Wells Fargo Bank, N.A.*, 280 F.R.D. 665 (S.D. Fla. 2012) ...................... 5, 39, 41, 44, 46

**NICHOLS KASTER PLLP**
80 South Eighth Street, Suite 4600
Minneapolis, Minnesota 55402
TEL. 612.256 3200 • FAX 612.215 6870

*Willson v. Bank of America, N.A.*, No. 04-1465, ECF No. 15 (N.D. Cal. July 26, 2004) ........16

*Willson v. Bank of America, N.A.*, No. 04-1465, 2004 WL 1811148 (N.D. Cal. Aug. 12, 2004)
..................................................................................................................................................16

*Woodard v. Fidelity Nat. Title Ins. Co.*, No. 06-1170, 2008 WL 5737364 (D.N.M. Dec. 8,
2008) ..........................................................................................................................................37

*Wright v. Fred Hutchinson Cancer Research Center*, No. 01-5217, 2001 WL 1782714 (W.D.
Wash. 2001) ...............................................................................................................................30

*Wulf v. Bank of Am., N.A.*, 798 F. Supp. 2d 586 (E.D. Pa. 2011) ..................................11, 40

*Yarger v. ING Bank, FSB*, 285 F.R.D. 308 (D. Del. 2012) ............................................37

*Yeager v. Bowlin*, 693 F.3d 1076 (9th Cir. 2012) ..........................................................18

*Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087 (9th Cir. 2010) ........................19

*Yue v. Conseco Life Ins. Co.*, 282 F.R.D. 469 (C.D. Cal. 2012) ..............................24, 25

*Zody v. Microsoft Corp.*, No. 12-00942, 2013 WL 2468250 (N.D. Cal. June 7, 2013) ..........35

Rules, Statutes & Regulations

12 C.F.R. Part 22, App. A ...........................................................................................4, 10

Fed. R. Civ. P. 8(a) ..........................................................................................................16

Fed. R. Civ. P. 23 .......................................................................................................*passim*

Other Authority

7A FEDERAL PRACTICE & PROCEDURE § 1778 (3d ed. 2005) ........................................41

2 NEWBERG ON CLASS ACTIONS § 4:55 (5th ed. 2012) ..................................................41

Restatement (Second) of Contracts § 211(2) .............................................................9, 25

PLAINTIFF'S REPLY MEMORANDUM
OF LAW IN FURTHER SUPPORT OF MOTION FOR CLASS
CERTIFICATION -x-
CASE No. 2:11-cv-00988 RJB

**NICHOLS KASTER PLLP**
80 South Eighth Street, Suite 4600
Minneapolis, Minnesota  55402
TEL. 612.256 3200 • FAX 612.215 6870

## **INTRODUCTION**

BoA[1] has not identified any reason to deny Plaintiff's Motion for Class Certification.  As detailed below, BoA's arguments lack legal and factual support.  Moreover, the Court should bear in mind BoA's prior misrepresentations to this Court and its contradictory arguments to the First Circuit in evaluating the contentions that BoA now makes in seeking to avoid class certification.

For example, when seeking dismissal of Plaintiff's initial Complaint, Defendants "expressly den[ied] that they received any commission in connection with the lender-placed insurance purchased on Plaintiff's behalf."  *ECF No. 7 at 16 n. 11.*  ████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████

BoA similarly makes disingenuous arguments about the need for individualized inquiries concerning the meaning of Paragraph 4 of the FHA Model Mortgage Form ("FHA Model Form").  BoA recently took a different position during its argument before the First Circuit in *Kolbe v. BAC Home Loans Servicing, L.P.*, No. 11-2030 (1st Cir.), which involves the exact same FHA Model Form.  There, BoA argued that the meaning of a "uniform covenant" should be "determined as a matter of law," and that such form contracts can have "only one meaning," *i.e.,* a "uniform meaning" for a "uniform covenant."  *Declaration of Abby Aggrey ("Aggrey Decl."), Ex. A at 7.*  In fact, BoA insisted that Paragraph 4 "cannot be varied by the negotiations of the parties.  It cannot be varied—it doesn't depend from contract to contract on what may have been said at the table and there is law on this."  *Id. at 9; see also id. at 14-15.*

Even putting aside BoA's hypocrisy, the arguments it now makes are meritless.

---

[1] Throughout this brief, the term "BoA" refers to Defendants Bank of America, N.A. and BAC Home Loans Servicing, LP.  The term "Opp." refers to BoA's Opposition to Plaintiff's Motion for Class Certification.  The term "Pl's Memo" refers to Plaintiff's initial memorandum of law in support of his Motion for Class Certification.

PLAINTIFF'S REPLY MEMORANDUM
OF LAW IN FURTHER SUPPORT OF MOTION FOR CLASS
CERTIFICATION -1-
CASE NO. 2:11-cv-00988 RJB

**NICHOLS KASTER PLLP**
80 South Eighth Street, Suite 4600
Minneapolis, Minnesota  55402
TEL. 612.256 3200 • FAX 612.215 6870

**First**, as to the Breach of Paragraph 4 Over-Insurance Class, there is a common, class-wide issue concerning whether Paragraph 4 of the FHA Model Form contains a single flood insurance requirement that calls for insurance "against loss by floods to the extent required by the Secretary" of Housing and Urban Development ("HUD"), or also requires the borrower to maintain flood insurance "in the amounts and for the periods that Lender requires." *See Skansgaard Decl. (ECF No. 126), Ex. 1 at ¶ 4.* The answer to this question will not depend on the individual borrower or any "extrinsic evidence" specific to a particular loan transaction. The FHA Model Form either allows the lender the discretion to require more flood insurance than HUD requires or it does not. This is a quintessential common issue that should be decided on a class-wide basis, either by the jury at trial based on its reading of the FHA Model Form, or by this Court as a matter of law based on the well-established principle that ambiguities in a mortgage contract are construed in favor of the borrower. *See, e.g., In re Emery*, 317 F.3d 1064, 1070 (9th Cir. 2003); *Murabayashi v. Honolulu Fed. Sav. & Loan Ass'n*, 848 F.2d 1243, 1988 WL 60168 at *2 (9th Cir. June 3, 1998). The "extrinsic evidence" cited by BoA simply is not relevant to the interpretation of a form contract, and does not defeat class certification. *See, e.g., Vedachalam v. Tata Consultancy Servs., Ltd.*, No. 06-0963, 2012 WL 1110004, at *9 (N.D. Cal. Apr. 12, 2012) (granting motion for class certification); *Ewert v. eBay, Inc.*, No. 07-02198, 2010 WL 4269259, at *7 (N.D. Cal. Oct. 25, 2010) (same).

**Second**, BoA's arguments about ▮▮▮▮▮▮▮▮▮▮▮ its kickback scheme ▮▮▮ ▮▮ ignore that the fundamental question regarding the lawfulness ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ is the same for each class member. The amount of the compensation received by BoA or its affiliates that was charged to class members is simply a question of damages that does not defeat class certification (and is objectively easy to calculate based upon BoA's own data that already has been produced to Plaintiff).

**Third**, although BoA argues that there were "variations in contracts, origination requirements, and interactions with employees" as to members of the Bait and Switch Class

PLAINTIFF'S REPLY MEMORANDUM
OF LAW IN FURTHER SUPPORT OF MOTION FOR CLASS
CERTIFICATION -2-
CASE NO. 2:11-cv-00988 RJB

**NICHOLS KASTER PLLP**
80 South Eighth Street, Suite 4600
Minneapolis, Minnesota  55402
TEL. 612.256 3200 • FAX 612.215 6870

(*Opp. at 37*), this ignores the class definition of the Bait and Switch Class as well as applicable law.  As discussed below, the Bait and Switch Class:  (1) is limited to borrowers "with a closed-end FHA mortgage" (*Pl's Memo at 1*); (2) is further limited to borrowers who were "subsequently required by [BoA] to purchase flood insurance … ***in excess*** of the amount that was required when they originated their loan" (*id.*); and (3) in any event, oral representations at closing (to the extent there were any relating to flood insurance) do not modify a written mortgage contract as a matter of law.  Further, the fact that some borrowers theoretically may have understood from other loan disclosures that their flood insurance requirements could change does not mean that ████████████████████████████████████ ████████████████████████████     ███████████████████████████████████████[2].

Increasing borrowers' coverage requirements for that reason is inconsistent with BoA's duty of good faith and fair dealing.  As the First Circuit stated in *Lass v. Bank of America, N.A.*, "[i]f the Bank demanded flood insurance coverage that exceeded the requirements of federal law and the mortgage for the purpose of increasing profits for itself or its affiliates, … its conduct would be at odds with the intended and agreed expectations of the contract."  695 F.3d 129, 138 (1st Cir. 2012) (internal quotation omitted); *see also Kolbe v. BAC Home Loans Servicing, L.P.*, 695 F.3d 111, 123-24 (1st Cir. 2011) (breach of good faith could exist where "allegations, in effect, amount to a claim that the Bank's motivation for demanding additional flood insurance coverage was to increase corporate profits by funneling new coverage to its own affiliates"), *vac'd & reh'g granted en banc* (1st Cir. Nov. 1, 2012).

**Fourth**, BoA's lengthy discussion regarding Notice of Special Flood Hazard ("NSFH") forms is a red herring.  Plaintiff's contract claim is based on the language of the FHA Model Form − not an NSFH.  This Court has never determined that an NSFH is part of any borrower's mortgage contract, and in fact, BoA does not actually argue that an NSFH is part of any

---

[2] Unless otherwise noted, all cited deposition exhibits and deposition transcripts were previously attached to the Declaration of Kai Richter in Support of Plaintiff's Motion for Class Certification ("First Richter Declaration") dated April 30, 2013.  *See ECF No. 124.*

PLAINTIFF'S REPLY MEMORANDUM
OF LAW IN FURTHER SUPPORT OF MOTION FOR CLASS
CERTIFICATION -3-
CASE NO. 2:11-cv-00988 RJB

**NICHOLS KASTER PLLP**
80 South Eighth Street, Suite 4600
Minneapolis, Minnesota  55402
TEL. 612.256 3200 • FAX 612.215 6870

borrowers' contract.  BoA's extended discussion of NSFHs is nothing but a sideshow, meant to distract the Court's attention from the fundamental class-wide issues relating to Paragraph 4 of the FHA Model Form.  In any event, most NSFHs contain standard language that is set forth in the Federal Register and is consistent with HUD regulations allowing for flood insurance coverage in the amount of the borrower's unpaid principal balance.  12 C.F.R. Part 22, App. A; *see also, e.g., Declaration of Shayla McPeters ("McPeters Decl."), ¶ 8 & Ex. 2.*

**Fifth**, BoA's arguments concerning Plaintiff's typicality miss the mark.  Plaintiff was subject to the same practice (and resulting harm) as all class members via BoA's uniform and automated force-placed flood insurance program.  Indeed, like so many borrowers, Plaintiff ultimately was unable to keep up with the increased monthly payments that resulted from BoA's force-placement of excessive flood insurance and the accompanying exorbitant charges imposed by BoA.  As discussed below, BoA's attempts to differentiate Plaintiff from other FHA borrowers who suffered at the hands of BoA's scheme lacks both factual and legal support.  Moreover, even if BoA's typicality arguments had any merit (which they do not), other class members are willing to serve as class representatives, such as Shayla McPeters, who remained current on her mortgage payments at all times despite being force-placed with excessive flood insurance coverage by BoA.  *See McPeters Decl., ¶¶ 1-6, 18-19.*

**Sixth**, BoA's arguments regarding the Washington Classes also fall short.  ███████ ████████████████████████████████████████████  The remaining arguments that BoA makes against certifying these classes are nothing more than a recycling of its arguments in opposition to certification of the nationwide classes.  As detailed herein, BoA's assertions are without merit.

**Seventh**, BoA's arguments concerning alleged variations in state law do not defeat nationwide class certification because the FHA Model Form is a *federal* mortgage form that contains uniform covenants that BoA acknowledges must be given a "uniform meaning" nationwide.  *Aggrey Decl., Ex. A at 7.*  As HUD itself stated in its *amicus* brief in *Kolbe* (which BoA relies upon in its opposition):

PLAINTIFF'S REPLY MEMORANDUM
OF LAW IN FURTHER SUPPORT OF MOTION FOR CLASS
CERTIFICATION -4-
CASE NO. 2:11-cv-00988 RJB

NICHOLS KASTER PLLP
80 South Eighth Street, Suite 4600
Minneapolis, Minnesota  55402
TEL. 612.256 3200 • FAX 612.215 6870

1
2
3
4

> **[T]he interpretation of Paragraph 4 [of the FHA Model Mortgage Form] is properly a matter of federal law**. The mortgage's choice-of-law clause provides that the contract is "governed by federal law and the law of the jurisdiction in which the Property is located."  State law may govern the portions of the standard FHA mortgage contract that vary from state to state, but **it would make little sense for the meaning of a uniform provision prescribed by a federal agency as a nationwide condition of participation in a federal program to depend on the content of state law**.

5   *Lindenbaum Decl. (ECF No. 156), Ex. 6 at 13-14 n.3*.  Moreover, even if state law were relevant

6   to the issues before the Court, BoA "overstates the extent of any variations in state contract law."

7   *In re Conseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig.*, 270 F.R.D. 521, 529 (N.D. Cal.

8   2010) (certifying nationwide class).  "At best, [BoA] has pointed to isolated and relatively minor

9   variations that may be handled at trial 'by grouping similar state laws together and applying them

10  as a unit.'"  *Id.*  Plaintiff's proposed trial plan and special jury verdict form demonstrate how any

11  relevant state law differences can be managed and addressed.[3]   Those differences "are not

12  sufficiently anomalous to deny class certification."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

13  1022 (9th Cir. 1998).

14      **Eighth**, BoA's purported affirmative defenses do not defeat predominance.  "Courts have

15  traditionally been reluctant to deny class action status as failing the predominance requirement of

16  Rule 23(b)(3) simply because affirmative defenses may be available against individual

17  members."  *Avilez v. Pinkerton Gov't Servs.*, 286 F.R.D. 450, 466-67 (C.D. Cal. 2012) (internal

18  quotation marks and citations omitted).  In other class actions related to force-placed insurance,

19  courts have rejected similar affirmative-defense-based challenges to predominance.  *See Lane v.*

20  *Wells Fargo Bank, N.A.*, No. 12-04026, 2013 WL 3187410, at *8 (N.D. Cal. June 21, 2013);

21  *Williams v. Wells Fargo Bank, N.A.*, 280 F.R.D. 665, 674-75 (S.D. Fla. 2012).

22      **Lastly**, BoA does not seriously challenge the superiority of the class action device.

23  Although it cites four cases in which borrowers have pursued claims on an individual basis

24  relating to force-placed insurance, only one of those cases related to flood insurance, and that

25

26  ---
[3] *See Second Declaration of Kai Richter in Support of Plaintiff's Motion for Class Certification ("Second Richter Decl."), Exs. 1 - 2.*

27

PLAINTIFF'S REPLY MEMORANDUM
OF LAW IN FURTHER SUPPORT OF MOTION FOR CLASS
CERTIFICATION -5-
CASE NO. 2:11-cv-00988 RJB

**NICHOLS KASTER PLLP**
80 South Eighth Street, Suite 4600
Minneapolis, Minnesota  55402
TEL. 612.256.3200 • FAX 612.215.6870

action was dismissed.  In two of the other cited cases, the plaintiffs were unrepresented by counsel, and proceeded *pro se* with predictable results.  Thus, the cases cited by BoA underscore the superiority of the class action device.

For these reasons, and as discussed below in detail, the Court should grant Plaintiff's Motion for Class Certification and certify each of the proposed Classes.

## ARGUMENT

### I.   THE BREACH OF PARAGRAPH 4 OVER-INSURANCE CLASS SHOULD BE CERTIFIED

#### A.   The Claims Asserted by the Breach of Paragraph 4 Over-Insurance Class Hinge on the Interpretation of a Uniform Covenant in a Form Contract

The Breach of Paragraph 4 Over-Insurance Class presents a common, predominating class-wide issue relating to whether BoA has the contractual authority to demand more flood insurance coverage than necessary to secure the loan balance and comply with HUD regulations. Certification of this class is appropriate because the question of liability will turn on the interpretation of a common provision in a uniform contract.  *See Pl's Memo at 41-42*; *Brand v. Nat'l Bank of Commerce*, 213 F.3d 636, 2000 WL 554193, at *1 (5th Cir. Apr. 11, 2000) (certifying nationwide class to pursue allegations that defendant "systematically forced place[d] [] insurance that … exceeded the coverage permitted by the loan agreement").  Indeed, "claims arising from the interpretation of a form contract are particularly suited for class treatment, and breach of contract cases are routinely certified as such."  *Cowit v. CitiMortgage, Inc.*, No. 12-869, 2013 WL 940466, at *6 (S.D. Ohio Mar. 8, 2013) (allowing a nationwide breach of contract claim) (citations omitted); *see also Pls' Memo at 44-46*.[4]

---

[4] *Accord*, *Schulken v. Washington Mutual Bank*, No. 09-02708, 2012 WL 28099, at *13 (N.D Cal. Jan. 5, 2012) (certifying class alleging breach of a form contract); *Ewert*, 2010 WL 4269259, at *7 (same); *Menagerie Productions v. Citysearch*, No. 08-4263, 2009 WL 3770668, at *10 (C.D. Cal. Nov. 9, 2009) (same); *Sacred Heart Health Systems, Inc. v. Humana Military Healthcare*, 601 F.3d 1159, 1171 (11th Cir. 2010) ("It is the form contract, executed under like conditions by all class members, that best facilitates class treatment"); *Smilow v. Southwestern Bell Mobile Systems, Inc.*, 323 F.3d 32, 42 (1st Cir. 2003) ("Overall, we find that common issues of law and fact predominate here. The case turns on interpretation of the form contract, executed by all class members and defendant."); *Allapattah Servs. v. Exxon Corp.*, 333 F.3d 1248, 1261

PLAINTIFF'S REPLY MEMORANDUM
OF LAW IN FURTHER SUPPORT OF MOTION FOR CLASS
CERTIFICATION -6-
CASE NO. 2:11-cv-00988 RJB

NICHOLS KASTER PLLP
80 South Eighth Street, Suite 4600
Minneapolis, Minnesota  55402
TEL. 612.256 3200 • FAX 612.215 6870

As noted above, BoA's current position is the opposite of its position before the First Circuit in the *en banc Kolbe* appeal, where BoA argued that the meaning of the "uniform covenant" should be "determined as a matter of law," and that such form contracts can have "only one meaning," *i.e.,* a "uniform meaning" for a "uniform covenant." *Aggrey Decl., Ex. A at 7.* BoA even insisted that Paragraph 4 "cannot be varied by the negotiations of the parties. It cannot be varied—it doesn't depend from contract to contract on what may have been said at the table and there is law on this." *Id. at 9; see also id. at 14-15.* This contradiction speaks volumes about the credibility of BoA's current argument.

Moreover, in its Memorandum in Support of its Motion to Dismiss, BoA emphasized that "[t]his is a straightforward contract case, which turns on the unambiguous terms of the contract in question." *ECF No. 7 at 1.* That BoA relies on Paragraph 4 of the FHA Model Form as the linchpin to its defense further underscores why class treatment is appropriate. In *Fournigault v. Independence One Mortg. Corp.*, No. 94-1742, 2007 WL 1423866 (N.D. Ill. May 10, 2007), the court certified a class that was defined, in part, as those who signed another form mortgage contract – the Single Family-Fannie Mae/Freddie Mac Uniform Instrument. *Id.* at *2-3. In support of its decision, the court analyzed "the approach Defendant took to its defense of the breach of contract claim," and stated:

> Defendant itself treats this as a case in which common issues predominate by a large margin. It seeks to eliminate the claims on grounds that apply either broadly or universally to all mortgag[ors]. It advocates uniform construction of the crucial terms of the contracts, regardless of differences in wording; this fact is not

(11th Cir. 2003); *Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 37 (E.D.N.Y. 2008) ("An overwhelming number of courts have held that claims arising out of form contracts are particularly appropriate for class action treatment."); *Mortimore v. Fed. Deposit Ins. Corp.*, 197 F.R.D. 432, 438 (W.D. Wash. 2000) ("Since this case involves the use of form contracts, it is particularly appropriate to use the class action procedure."); *Haroco, Inc. v. American Nat. Bank and Trust Co. of Chicago*, 121 F.R.D. 664, 669 (N.D. Ill. 1988) ("Since plaintiffs' claims arise from allegations of common practice and rights derived from form contracts, the case appears to present the classic case for treatment as a class action.") (internal quotations omitted); *Kleiner v. First Nat. Bank of Atlanta*, 97 F.R.D. 683, 692 (N.D. Ga. 1983) (claims based on form contracts "present the classic case for treatment as a class action").

PLAINTIFF'S REPLY MEMORANDUM
OF LAW IN FURTHER SUPPORT OF MOTION FOR CLASS
CERTIFICATION -7-
CASE NO. 2:11-cv-00988 RJB

NICHOLS KASTER PLLP
80 South Eighth Street, Suite 4600
Minneapolis, Minnesota  55402
TEL. 612.256 3200 • FAX 612.215 6870

surprising, given the use of standard forms in mortgage transactions throughout the country.

*Id.* at *2.   The same reasoning applies here, making certification of the proposed class appropriate.   *See Schulken*, 2012 WL 28099, at *10 (certifying class because "[b]oth Plaintiffs and Defendants rely on the interpretation of the HELOC contracts to support their claims or defenses").

### B.   Extrinsic Evidence Specific to Individual Transactions Does Not Aid the Interpretation of a Form Contract

Given BoA's previous position that the FHA Model Form has a "uniform meaning" that "cannot be varied by the negotiations of the parties" (*Aggrey Decl., Ex. A at 7, 9*), it is disingenuous for BoA to now assert that the Court must look to "[e]xtrinsic evidence of the parties' negotiations and course of dealing" in individual loan transactions.   *Opp. at 27.*   While this type of evidence may be relevant in some cases for purposes of interpreting an ambiguous contract provision that was individually negotiated between two parties, it does not aid the interpretation of a form contract that was not subject to negotiation and must be interpreted consistently across thousands of transactions.

The court's decision in *Ewert,* 2010 WL 4269259 is closely on point.   In that case, eBay similarly attempted to defeat class certification on the ground that "individualized inquiry is necessary to determine eBay's liability for breach of contract because extrinsic evidence must be considered when engaging in contract interpretation."   *Id.* at *6.   Like BoA, eBay argued that "the court must evaluate each [class member's] course of dealing with eBay to understand the terms of each class member's contract with eBay."   *Id.*   However, the court disagreed, and held that "when there is a standardized agreement like the form contract at issue in this case, the agreement 'is interpreted wherever reasonable as treating alike all those similarly situated, without regard to their knowledge or understanding of the standard terms of the writing.'"   *Ewert*, 2010 WL 4269259, at *7 (quoting Restatement (Second) of Contracts § 211(2)).   As the *Ewert* court further explained:

PLAINTIFF'S REPLY MEMORANDUM
OF LAW IN FURTHER SUPPORT OF MOTION FOR CLASS
CERTIFICATION -8-
CASE NO. 2:11-cv-00988 RJB

NICHOLS KASTER PLLP
80 South Eighth Street, Suite 4600
Minneapolis, Minnesota  55402
TEL. 612.256 3200 • FAX 612.215 6870

1
2
3

> Courts in construing and applying a standardized contract seek to effectuate the reasonable expectations of the average member of the public who accepts it. … Accordingly, in construing the form contract …, the court need not delve into the actual knowledge of individual class members.

4   *Id.* (internal quotation marks and citation omitted).  Accordingly, the court granted the plaintiff's

5   motion for class certification.

6        Other recent class certification decisions involving form contracts are consistent with this

7   ruling.  *See In re Conseco Life Ins. Co. LifeTrend Ins. Mktg. & Sales Practice Litig.*, 920 F.

8   Supp. 2d 1050, 1065 (N.D. Cal. 2013) ("Conseco's argument misses the mark. The insurance

9   contracts at issue here are standard forms. They are drafted as such precisely in order to avoid the

10  problem Conseco now invites—that thousands of policyholders have thousands of different

11  understandings of a standard form."); *Vedachalam*, 2012 WL 1110004, at *9 (quoting *Ewert* and

12  certifying class).[5]  There is no reason for this Court to reach a different result here.  To the extent

13  that Paragraph 4 of the FHA Model Form is ambiguous, it is a well-established principle of law

14  that this ambiguity must be resolved against both HUD (the party that drafted the form) and BoA

15  (the party that adopted it).  *See, e.g., In re Emery*, 317 F.3d at 1070; *Murabayashi*, 1988 WL

16  60168, at *2.  The extrinsic evidence cited by BoA does not overcome this presumption.  *See*

17  *Ewert*, 2010 WL 4269259, at *7 ("even if eBay could establish some ambiguity using extrinsic

18  evidence, the ambiguous contract terms would be interpreted against eBay, the drafter of the

19  form contract."); *Vedachalam*, 2012 WL 1110004, at *9 (same).

20        Notably, the cases cited by BoA do not involve form contracts.  *Opp. at 27*.  Moreover,

21  BoA concedes that "absent class members' interpretations of Paragraph 4 are irrelevant[.]"  *Opp.*

22  *at 26-27*.  Thus, there is no need to conduct individualized inquiries relating to each class

23  member's subjective understanding of Paragraph 4 of the FHA Model Form.

24

---

25  [5] *Accord*, *Menagerie Prods.*, 2009 WL 3770668, at *10 (common issues predominate with

26  ambiguous form contract because "[e]xtrinsic evidence that the Court would consider in making this determination [of the meaning of the contract], such as representations on Citysearch's

27  website, can be established on a classwide basis.")

PLAINTIFF'S REPLY MEMORANDUM
OF LAW IN FURTHER SUPPORT OF MOTION FOR CLASS
CERTIFICATION -9-
CASE NO. 2:11-cv-00988 RJB

1
2       While BoA glibly notes that some courts have held that an NSFH is a part of the
3   mortgage contract, this Court has never done so, and BoA does not ask this Court to do so.  In
4   fact, BoA has argued vigorously elsewhere that an NSFH is **_not_** part of the mortgage contract.
5   *See, e.g., Arnett v. Bank of America, N.A*, 874 F. Supp. 2d 1021, 1029-30 (D. Or. 2012)
6   (discussing BoA's argument that NSFH is not part of mortgage contract and should not be
7   considered).[6]  In any event, the language in NSFHs is largely standard language proscribed by
federal regulations.  *See* 12 C.F.R. Pt. 22, App. A.[7]

8       The cases cited by BoA are distinguishable.  In *Vega v. T-Mobile USA, Inc.*, 564 F.3d
9   1256 (11th Cir. 2009), the Eleventh Circuit held that no common contract existed for a proposed
10  class of at-will employees whose contracts with the defendant were all **oral** employment
11  agreements.  *Id.* at 1272.  Similarly, in *Gordon v. Chase Home Finance LLC*, No. 11-2001, 2013
12  WL 436445 (M.D. Fla. Feb. 5, 2013), the court found that there were no common issues because
13  the breach of contract claim was "based on allegations of Defendant's 'uniform' **policies**" rather
14  than a common written document.  *Id.* at *5 (emphasis added).  Unlike those cases, this case
15  deals with BoA's uniform practices in connection with a single, standardized form contract.

16  **C. BoA's Merits Arguments Are Not a Proper Basis for Opposing Class**
17  **Certification**

18      Although BoA attempts to reargue the merits of its interpretation of Paragraph 4 (*Opp. at*
19  *16-18*), these merits arguments are irrelevant for purposes of the pending motion, and were
20  previously rejected by this Court in connection with BoA's motion to dismiss.  This Court's
21  denial of BoA's motion to dismiss was well-reasoned and consistent with the rulings of several
22

---

23  [6] It is noteworthy that despite now contending that NSFHs and other disclosures received by
24  borrowers are of critical relevance to the amount of flood insurance BoA is permitted to force-
place, BoA concedes that it does not even bother to keep track of or maintain computerized
25  records of the various forms that borrowers received.  *Opp. at 21 n.18*.

26  [7] Where a claim arises out of similar, even if not identical, contracts, class treatment is
appropriate.  *See, e.g., Menagerie Prods.*, 2009 WL 3770668 at *10 n.11; *Heartland Comm., Inc.*
27  *v. Sprint Corp.*, 161 F.R.D. 111, 116 (D. Kan. 1995).

PLAINTIFF'S REPLY MEMORANDUM
OF LAW IN FURTHER SUPPORT OF MOTION FOR CLASS
CERTIFICATION -10-
CASE NO. 2:11-cv-00988 RJB

**NICHOLS KASTER PLLP**
80 South Eighth Street, Suite 4600
Minneapolis, Minnesota  55402
TEL. 612.256 3200 • FAX 612.215 6870

other courts.[8]  There is no reason for this Court to revisit its earlier ruling, and certainly not on a motion for class certification.  *See United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Service Workers Intern. Union, AFL-CIO, CLC v. ConocoPhillips Co.*, 593 F.3d 802, 808 (9th Cir. 2010) ("'In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met[.]'") (*quoting Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-178 (1974) (quotation marks and citations omitted in original)).[9]  To the extent that such merits arguments have any relevance at all, they simply serve to underscore that there is a fundamental issue common to all class members concerning the proper interpretation of Paragraph 4 of the FHA Model Form.

The important question for purposes of this motion is whether Plaintiff's Paragraph 4 Over-Insurance Class claims are amenable to class-wide resolution.  BoA does not seriously argue to the contrary.  Indeed, BoA's counsel previously argued in *Kolbe* that the interpretation of Paragraph 4 is one of "exceptional, and indeed, nationwide importance" (*First Richter Decl., Ex. 62*), and that Paragraph 4 should have "only one meaning."  *Aggrey Decl., Ex. A at 7.*

### D.  Plaintiff Is Typical of the Paragraph 4 Over-Insurance Class Members

BoA's argument that Plaintiff's alleged breach of the mortgage renders him atypical is flawed for a number of reasons.  *Opp. at 34.*  First, and most obviously, there is no reason to

---

[8] *See Kolbe,* 695 F.3d at 117-122; *Casey v. Citibank, N.A.*, 915 F. Supp. 2d 255, 262 (N.D.N.Y. 2013); *Morris v. Wells Fargo Bank N.A.*, 11-474, 2012 WL 3929805, *6-8 (W.D. Pa. Sept. 7, 2012); *Wulf v. Bank of Am., N.A.*, 798 F. Supp. 2d 586, 591-94 (E.D. Pa. 2011).

[9] Because BoA's merits arguments are irrelevant to the pending motion, Plaintiff will not detail here the response to BoA's arguments presented in the *Kolbe* case, or explain how the government's newly-articulated position about Paragraph 4 does not defeat FHA borrowers' claims against BoA.  *See Second Richter Decl., Ex. 10* (Reply Brief of Plaintiff-Appellant Stanley Kolbe to the Amicus Brief for the United States in *Kolbe v. BAC Home Loans Servicing, L.P.,* No. 11-2030 (1st Cir.)).  It is sufficient to note that three justices of the First Circuit questioned the government's attorney about its amicus brief being the very first time it had articulated its new position on Paragraph 4, and questioned the government's assertion that it was entitled to deference with respect to its new position.  *Aggrey Decl., Ex. A at 19-21.*

PLAINTIFF'S REPLY MEMORANDUM
OF LAW IN FURTHER SUPPORT OF MOTION FOR CLASS
CERTIFICATION -11-
CASE NO. 2:11-cv-00988 RJB

NICHOLS KASTER PLLP
80 South Eighth Street, Suite 4600
Minneapolis, Minnesota  55402
TEL. 612.256 3200 • FAX 612.215 6870

believe that Plaintiff's position is not in fact typical of the class members.  Plaintiff was current on his mortgage until BoA's unauthorized force-placed premiums made his payment unaffordable, and after making several reduced payments, he subsequently stopped paying his mortgage.  *Skansgaard Decl, ¶¶ 24-27.*  BoA asserts that this alleged "breach" renders him atypical, but it does so without presenting any facts regarding how many other members of the class also found their unlawful force-placed insurance charges unaffordable and subsequently fell behind. BoA's failure to do so is telling.

Second, the amount of any alleged delinquency includes the very charges in dispute in this case.  Crucially, BoA does not dispute that any nonpayment occurred several payments ***after*** it force-placed expensive and unauthorized flood insurance on Plaintiff's home.  As a result, any purported breach by Plaintiff occurred after, and was directly caused by, BoA's breach. Moreover, because Plaintiff indisputably made several payments after he was force-placed, there is no question that he paid some of the charges at issue and has actual damages.  And even if Plaintiff had not paid the charges imposed upon him, or if some members of the class have not paid, they still have valid claims which should be included in this case.  *See infra at 43-44.*

Third, outside of its unclean hands defense, which has no application here,[10] BoA does not make clear what, if any, "defenses unique to [Plaintiff]" would be asserted based on his

---

[10] BoA provides no analysis whatsoever of the elements of the "unclean hands" defense or its application here.  A review of the elements makes clear that the doctrine has no applicability:

> To establish unclean hands, a defendant must demonstrate (1) inequitable conduct by the plaintiff; (2) that the plaintiff's conduct directly relates to the claim which it has asserted against the defendant; and (3) plaintiff's conduct injured the defendant. *See JTH Tax, Inc. v. H & R Block Eastern Tax Services, Inc.,* 128 F.Supp.2d 926, 949 (E.D. Va. 2001).

*Survivor Prods. LLC v. Fox Broad. Co.*, No. 01-3234, 2001 WL 35829270, *3 (C.D. Cal. June 12, 2001).  With respect to the second element, "what is material is not that the plaintiff's hands are dirty, but that he dirtied them in acquiring the right he now asserts." *Id.* at *4 (quoting *Republic Molding Corporation v. B.W. Photo Utilities,* 319 F.2d 347, 349 (9th Cir. 1963)).  Even assuming that Plaintiff's alleged failure to pay his mortgage is inequitable, and that this conduct somehow harmed BoA, BoA absolutely cannot establish that Plaintiff undertook this conduct "in acquiring the right he now asserts," because the force-placed charges at issue in this case were

PLAINTIFF'S REPLY MEMORANDUM
OF LAW IN FURTHER SUPPORT OF MOTION FOR CLASS
CERTIFICATION -12-
CASE NO. 2:11-cv-00988 RJB

**NICHOLS KASTER PLLP**
80 South Eighth Street, Suite 4600
Minneapolis, Minnesota  55402
TEL. 612.256 3200 • FAX 612.215 6870

alleged delinquency, choosing instead to argue that the alleged delinquency means Plaintiff has different incentives than other class members. *Opp. at 34*. This is simply untrue. Plaintiff, like other class members, was subject to unlawful and excessive force-placed flood insurance. Plaintiff, like other class members, seeks to have those charges refunded or reversed. The interests of Plaintiff and class members are thus completely aligned, and the alleged delinquency does nothing to change that. Plaintiff has made clear that he understands and takes seriously the duties of a class representative, and he has actively participated in this case so far, including producing a significant volume of discovery and appearing for a lengthy deposition. *Skansgaard Decl., ¶¶ 28-31*. BoA's insinuation that Plaintiff's alleged delinquency would lead him to act counter to the best interests of the class is pure speculation, counter to his sworn declaration, and insulting to him and inconsistent with his participation in this matter thus far.

Lastly, BoA argues that Plaintiff is not typical of the class because he did not receive an opt-out notice or NSFH. *See Opp. at 34, 47*. These arguments are red herrings.[11] Receipt of these documents is not a part of the class definitions and is not essential to any of the claims made in this case. Plaintiff's claims are based upon violation of the mortgage contract, and BoA makes no argument that Plaintiff's FHA mortgage contract is in any way atypical.[12] Finally, BoA's assertion that not receiving these documents makes Plaintiff atypical is not backed up by any supporting facts. BoA makes no effort to establish how many members of the class actually received these documents, whether receiving them is, in fact, typical, or how the receipt of such documents by class members somehow predominates over the common issues in regard to the interpretation of Paragraph 4.

---

indisputably imposed upon Plaintiff **before** he allegedly became delinquent on his mortgage. *Id.* This is fatal to BoA's assertion of this defense, and the assertion of an inapplicable defense simply cannot negate typicality.

[11] The bearing of the opt-out notices and NSFHs on commonality is discussed elsewhere at 9-10 and 27-28.

[12] In fact, at oral argument in the *Kolbe* appeal, the government represented that there are "eight million mortgages nationwide with [Paragraph 4] in it." *Aggrey Decl., Ex. A at 15*.

PLAINTIFF'S REPLY MEMORANDUM
OF LAW IN FURTHER SUPPORT OF MOTION FOR CLASS
CERTIFICATION -13-
CASE NO. 2:11-cv-00988 RJB

NICHOLS KASTER PLLP
80 South Eighth Street, Suite 4600
Minneapolis, Minnesota  55402
TEL. 612.256 3200 • FAX 612.215 6870

In any event, class member Shayla McPeters has submitted a declaration indicating that she is willing to serve as an additional class representative, and she should be allowed to do so if the Court believes it is necessary.  *See Kennerly v. United States*, 721 F.2d 1252, 1260 (9th Cir. 1983); *Nat'l Federation of Blind v. Target Corp.*, 582 F. Supp. 2d 1185, 1201 (N.D. Cal. 2007). Like Plaintiff, Ms. McPeters took out an FHA mortgage that was transferred to Countrywide and later to BoA.  *McPeters Decl., ¶¶ 7, 10, 12*.  Like Plaintiff, Ms. McPeters was required by BoA to carry flood insurance in excess of her unpaid principal balance and in excess of the amount of coverage she had in place upon originating her mortgage loan.  *Id., ¶¶ 7, 9, 13-14*.  And like Plaintiff, Ms. McPeters was force-placed with flood insurance coverage by BoA.  *Id., ¶ 15*.  The only difference in her situation is that she received an NSFH upon originating her mortgage (*id., ¶ 8*), and remained current on her mortgage at all times (even after she was force-placed).  *Id., ¶ 18*.  Thus, neither of BoA's typicality arguments apply to her.

## II.   THE KICKBACK CLASS SHOULD BE CERTIFIED

BoA seeks to avoid certification of the Kickback Class on three grounds:  (1) that the theory of liability for the Kickback Class purportedly was "unpled"; (2) that common issues do not predominate; and (3) that Plaintiff is supposedly an inadequate class representative.  Each of these arguments lacks merit and the Kickback Class should be certified.

### A.   BoA's Liability For Kickbacks Has Been Raised Throughout the Litigation

Contrary to BoA's assertion, Plaintiff has claimed throughout this case that BoA improperly profited from force-placed insurance, both directly and indirectly through its affiliates and subsidiaries.  The First Amended Complaint ("FAC") explicitly alleges that BoA "force-placed flood insurance coverage through affiliate companies in order to generate commissions or other compensation for Bank of America and/or its affiliates" (*FAC, ¶ 4*), and further alleges that "[a]s a direct result," Plaintiff has "suffered damages in the form of increased insurance premiums" (*id. ¶ 53*).  Thus, the FAC sets forth allegations relating to BoA's kickback scheme that are intertwined with Plaintiff's allegations regarding his contract claims as well as

PLAINTIFF'S REPLY MEMORANDUM
OF LAW IN FURTHER SUPPORT OF MOTION FOR CLASS
CERTIFICATION -14-
CASE NO. 2:11-cv-00988 RJB

NICHOLS KASTER PLLP
80 South Eighth Street, Suite 4600
Minneapolis, Minnesota  55402
TEL. 612.256 3200 • FAX 612.215 6870

his Washington Consumer Protection Act claim. *See, e.g., FAC, ¶¶ 4, 24, 31, 34, 36, 44, 50, 51, 53, 59.* Indeed, all of the allegations relating to commissions and kickbacks were expressly incorporated into each of Plaintiff's claims. *Id. at ¶¶ 40, 48, 55.*

The Court did not permit Plaintiff's contract claims to "survive based only upon allegedly excessive coverage requirements," as BoA contends. *Opp. at 38.* The Court's opinion resolved the issues presented by BoA in its motion to dismiss, and BoA only sought to dismiss the contract claims based on its contention that Paragraph 4 permitted its conduct. *ECF No. 7 at 9-15; see also Order Denying Motion to Dismiss (ECF No. 29) at 5* ("Defendants argue primarily that the breach of covenant of good faith and fair dealing claim must be denied because they have not required flood insurance beyond the terms of the deed of trust."). This may have been because Defendants tried to deflect the kickback issue by "expressly deny[ing] that they received any commission in connection with the lender-placed insurance purchased on Plaintiff's behalf" (*ECF No. 7 at 16*), which BoA now admits was false. *See, e.g., Opp. at 41; Dickson Decl. (ECF No. 159) ¶¶ 14, 17; Pellerin Decl. (ECF No. 165) at ¶ 19.* This does not mean the Court limited Plaintiff's ability to pursue his allegations relating to the receipt of kickbacks by BoA.

In any event, Plaintiff's Complaint was subject to notice pleading.[13] The Ninth Circuit has repeatedly made clear that "[n]otice pleading requires the plaintiff to set forth in his complaint *claims for relief*, not causes of action…or legal theories." *Alvarez v. Hill*, 518 F.3d 1152, 1157 (9th Cir. 2008) (emphasis in original); *see also Am. Timber & Trading Co. v. First Nat. Bank of Oregon*, 690 F.2d 781, 786 (9th Cir. 1982) ("A party need not plead specific legal

---

[13] To the extent that BoA objects to changes in the *definition* of the Kickback Class rather than the *legal theories* asserted by the Class, such objections lack merit because the Kickback Class was merely narrowed from the broader class Plaintiff asserted in his FAC, *see ECF No. 43 at ¶¶ 31-32*, and BoA suffers no prejudice from the more focused class definition. *Casida v. Sears Holding Corp.*, No. 11-1052, 2012 WL 3260423, *10 (E.D. Cal. Aug. 8, 2012) (permitting plaintiffs to modify class definition at class certification where plaintiffs sought "to narrow the class originally proposed and [the defendants did] not articulate any particular prejudice that [would] arise[] from the newly narrowed class or any additional discovery that would be required"); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 591 (N.D. Cal. 2010).

PLAINTIFF'S REPLY MEMORANDUM
OF LAW IN FURTHER SUPPORT OF MOTION FOR CLASS
CERTIFICATION -15-
CASE NO. 2:11-cv-00988 RJB

NICHOLS KASTER PLLP
80 South Eighth Street, Suite 4600
Minneapolis, Minnesota  55402
TEL. 612.256 3200 • FAX 612.215 6870

theories in the complaint, so long as the other side receives notice as to what is at issue in the case."). Indeed, as one court in this district recently put it:

> A complaint can give fair notice of a claim even without citing to a particular source of law, provided that the factual allegations establish a plausible entitlement to relief. Thus, the crux of the matter is whether the complaint contains "*claims for relief*, not causes of action, statutes, or legal theories."

*Theiss v. County of Snohomish*, No. 12–1880, 2013 WL 2319397, at *5 (W.D. Wash. May 28, 2013) (internal citation omitted) (emphasis in original) (citing *Alvarez*, 518 F.3d at 1157); *see also Allen Saltzman Associates, Inc. v. Aileen, Inc*., No. 84-1741, 1986 WL 5738, at *2 (N.D. Ill. 1986).[14]

Nor is there any requirement under Rule 8(a) – as BoA suggests (*Opp. at 38-39*) – that Plaintiff mention a violated contractual provision by name.  In fact, BoA itself successfully argued in *Willson v. Bank of America, N.A.*, No. 04–1465, 2004 WL 1811148 (N.D. Cal. Aug. 12, 2004), that "[a]lthough … state courts might require that a contract be attached to the complaint or its specific terms be set forth therein, there is no similar requirement in federal court actions."[15]   The court agreed, finding that:

> Willson has also failed to convince the Court that dismissal of the Bank's breach of contract counterclaim would be appropriate.…   [T]he Bank has alleged existence of a written contract, performance by the Bank under the contract, breach of the contract by Willson, and causation and damages. This is all that is required, and the Bank need not allege specific terms of the contract under federal notice pleading standards.

2004 WL 1811148, at *4; s*ee also Ehreth v. Capital One Service, Inc.*, No. 08-0258, 2008 WL 3891270, at *3 (W.D. Wash. Aug. 19, 2008) (rejecting argument that Rule 8 requires

---

[14]  BoA relies on *Munoz v. Giumarra Vineyards Corp*., No. 09- 00703, 2012 WL 2617553, at *15-17 (E.D. Cal. July 5, 2012), for the proposition that a new theory of liability should not be raised in a class certification motion. However, *Munoz* involved a new set of factual allegations (that defendants failed to pay plaintiffs during their breaks), not a new theory of liability, and the court conducted an extensive analysis before concluding that the complaint did not put defendants on notice of the new claim.

[15] *Memorandum in Opposition re First Motion to Dismiss Counterclaims at 13*, *Willson v. Bank of America, N.A.*, No. 3:04-cv-01465, ECF. No. 15 (N.D. Cal. July 26, 2004).

PLAINTIFF'S REPLY MEMORANDUM
OF LAW IN FURTHER SUPPORT OF MOTION FOR CLASS
CERTIFICATION -16-
CASE NO. 2:11-cv-00988 RJB

NICHOLS KASTER PLLP
80 South Eighth Street, Suite 4600
Minneapolis, Minnesota  55402
TEL. 612.256 3200 • FAX 612.215 6870

identification of specific contractual terms and noting that "the alleged breaches are obvious: defendant cannot charge a fee higher than the contract authorizes[.]"); *Conseco*, 270 F.R.D. at 529-30 (disagreeing with defendant's assertion that "plaintiffs cannot seek certification on a theory not expressly stated in their complaint.").

Furthermore, BoA's kickback scheme has been the focus of extensive discovery for more than a year, including written discovery and numerous depositions.[16]  The record is voluminous regarding BoA's kickback scheme, and BoA cannot in good faith claim any surprise relating to the Kickback Class.  In short, BoA's assertion that the Kickback Class now asserts a "new legal theory" is simply incorrect, as Plaintiff set forth detailed kickback allegations in the FAC and then sought and took discovery on that theory via numerous written discovery requests and depositions.  Indeed, this discovery ultimately exposed the falsity of Defendants' "express[] den[ial] that they received any commission in connection with the lender-placed insurance purchased on Plaintiff's behalf" (*ECF No. 7 at 16*).

**B.    The Kickback Class Presents Common Issues that Predominate**

BoA argues that the Kickback Class should not be certified because ███████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████  These arguments do not support the denial of class certification.

First, ███████████████████████████████████████████████████

<hr />

[16] *See, e.g., Second Richter Decl., Ex. 8* (Rule 30(b)(6) deposition topics 24, 25, 29, 34 & 35);

PLAINTIFF'S REPLY MEMORANDUM
OF LAW IN FURTHER SUPPORT OF MOTION FOR CLASS
CERTIFICATION -17-
CASE NO. 2:11-cv-00988 RJB

NICHOLS KASTER PLLP
80 South Eighth Street, Suite 4600
Minneapolis, Minnesota  55402
TEL. 612.256.3200 • FAX 612.215.6870



[17] ... the Court should not consider Mr. Dickson's recent statements (or the arguments by BoA relying on those statements) because they are contradicted by prior sworn deposition testimony and are offered solely to proffer new facts in opposition to class certification. *See, e.g.*, *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) ("general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony"); *see also Sarvis v. General Dynamics Info. Tech, Inc.*, 663 F. Supp. 2d 883, 894 n.9 (C.D. Cal. 2009) (disregarding portions of a declaration flatly contradicted by declarant's deposition); *Fisher v. Ciba Specialty Chems. Corp.*, 238 F.R.D. 273, 284-85 (S.D. Ala. 2006) (noting party's submission of contrary affidavit on class certification and striking affidavit under sham affidavit rule).

PLAINTIFF'S REPLY MEMORANDUM
OF LAW IN FURTHER SUPPORT OF MOTION FOR CLASS
CERTIFICATION -18-
CASE NO. 2:11-cv-00988 RJB

NICHOLS KASTER PLLP
80 South Eighth Street, Suite 4600
Minneapolis, Minnesota 55402
TEL. 612.256 3200 • FAX 612.215 6870

█████████████████████████████████████████████████ There
are only a few commission rates that will need to be examined, all of which were contractually
set and applied to borrowers on a uniform and automated basis.

████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

commission amounts relate solely to the issue of damages owed to members of the Kickback
Class, and as the Ninth Circuit has stated repeatedly, "[t]he amount of damages is invariably an
individual question and does not defeat class action treatment." *Leyva v. Medline Industrs., Inc.*,
716 F.3d 510, 514 (9th Cir. 2013); *Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1089
(9th Cir. 2010) ("The potential existence of individualized damage assessments ... does not
detract from the action's suitability for class certification.").[19] Damages can easily be calculated
on a class-wide basis from the data within BoA's computer systems ██████████████████████

████████████████████████████████████████████████████████████

████████████████████████████ [20] *See, e.g., Leyva*, 716 F.3d at 515-16 ("[Defendant's] electronic []

─────────────────────────────

█ █████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████

[19] BoA's reliance on the Supreme Court's decision in *Comcast Corp. v. Behrend*, 133 S. Ct. 1426
(2013), is misplaced.  The Ninth Circuit has explicitly stated that the *Comcast* ruling did not
displace the Ninth Circuit's long-standing rule that "damages calculations alone cannot defeat
certification." *Leyva*, 716 F.3d at 514 (quoting *Yokoyama*, 594 F.3d at 1094).

[20] Notably, BoA does not deny that the data necessary to conduct a damages analysis is available
in its computer systems.  This is not surprising because BoA would have to know the portfolio a
borrower was in, the premium, and the applicable commission rate at the time of force-placement
to know its corresponding cut of the premium.

████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
██████████████████████████████████████████████

PLAINTIFF'S REPLY MEMORANDUM
OF LAW IN FURTHER SUPPORT OF MOTION FOR CLASS
CERTIFICATION -19-
CASE NO. 2:11-cv-00988 RJB

NICHOLS KASTER PLLP
80 South Eighth Street, Suite 4600
Minneapolis, Minnesota 55402
TEL. 612.256 3200 • FAX 612.215 6870

1  records contain much of the data needed to calculate damages. … Thus, the district court
2  abused its discretion by ignoring the database's potential to alleviate the burden of determining
3  damages."); *Lane*, 2013 WL 3187410, at *9 (recognizing that damages relating to commissions
4  associated with force-placed insurance can be proven on a class-wide basis).



16  More importantly, the evidence on the reasonableness of commissions is a predominating

PLAINTIFF'S REPLY MEMORANDUM
OF LAW IN FURTHER SUPPORT OF MOTION FOR CLASS
CERTIFICATION -20-
CASE NO. 2:11-cv-00988 RJB

NICHOLS KASTER PLLP
80 South Eighth Street, Suite 4600
Minneapolis, Minnesota 55402
TEL. 612.256 3200 • FAX 612.215 6870

1  common issue that does not vary from borrower to borrower, and BoA does not contend

2  otherwise. ██████████████████████████████████████████████

3  ██████████████████████████████████████████████████████

4  ██████████████████████████████████████████████████████

5  ████████████[22]

6       For example, ████████████████████████████████████████

7  ██████████████████████████████████████████████████████

8  ████████████████████████████████████ will not involve any

9  borrower-specific inquiries. ██████████████████████████████

10 █████████████████████; *see also Rebuttal Declaration of J. Robert Hunter in*

11 *Support of Plaintiff's Motion for Class Certification (Hunter Rebuttal Decl.")*, ¶¶ *21, 32.*

12 Likewise, whether ███████████████████████████████████████

13 █████████████████████████████████████████ is again a

14 universal issue that can be resolved on a single factual record. *Id.* If the Court finds that receipt

15 of the commissions was a breach of the FHA Model Form or a violation of the Washington

16 Consumer Protection Act, Plaintiff can calculate damages mechanically from BoA's own data

17 ████████████████.

18            **2.     BoA's Disclosures Regarding Commissions Were Uniform**

19       BoA asserts that the Court will need to examine varying disclosures that borrowers

20 received about commissions.  However, ██████████████████████████

21  _____

22 █████████████████████████████████████████████████████████

23 █████████████████████████████████████████████████████████

24 █████████████████████████████████████████████████████████

25 █████████████████████████████████████████████████████████

26 █████████████████████████████████████████████████████████

27 █████████████████████████████████

PLAINTIFF'S REPLY MEMORANDUM
OF LAW IN FURTHER SUPPORT OF MOTION FOR CLASS
CERTIFICATION -21-
CASE NO. 2:11-cv-00988 RJB

NICHOLS KASTER PLLP
80 South Eighth Street, Suite 4600
Minneapolis, Minnesota  55402
TEL. 612.256 3200 • FAX 612.215 6870



1 ████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████

3 ███████████████████████████████████     The other disclosures

4 cited by BoA also fail to establish any variation.   The disclosures that BoA points to (*Kraus*

5 *Decl., Ex. 1 at BACARNETT10102052; Genova Decl., ¶ 7 & Ex. 1 at BACARNETT1012203*)

6 also contain language suggesting that an insurance agency affiliated with BoA may get a

7 commission on force-placed policies.  *See Kraus Decl., Ex. 1 at BACARNETT10102052*; *Genova*

8 *Decl., ¶ 7 & Ex. 1 at BACARNETT1012203*.   The language in these documents is identical in

9 substance to the disclosures that BoA made in its form cycle letters sent to all borrowers,

10 including Plaintiff.      *See Grzsekowiak Decl., Exs. 3-4*; *Skansgaard Decl., Ex. 11 at*

11 *BACSKAN0000630, Ex. 12 at BACSKAN0000635.*  Thus, contrary to BoA's contention, there are

12 no variations for the Court to examine.

13       The issues relating to those disclosures can be resolved on a class-wide basis.   For

14 instance, a common legal question is whether the language in the cycle letters regarding BoA's

15 possible receipt of a commission on force-placements somehow relieves BoA of its liability.[23]

16 ████████████████████████████████████████████████████

17 ████████████████████████████████████████████████████

18 ████████████████

19       **3.      Plaintiff Is Typical of the Kickback Class**

20       Lastly, BoA argues that Plaintiff is "atypical because he failed to mitigate his damages"

21 by purchasing his own additional flood insurance.  *Opp. at 44*.  This argument is frivolous.  First,

22 BoA wrongly presumes that Plaintiff had an obligation to get additional flood insurance in

23 response to BoA's unauthorized coverage demands.  *See Lass*, 695 F.3d at 141 ("Little need be

24 said about the Bank's assertion that any retention of a benefit was not inequitable as a matter of

---

[23] The fact that BoA mailed these cycle letters to Plaintiff and other borrowers does not absolve it of liability for Plaintiff's kickback claims.  *See infra* at 42 & n. 42 .

PLAINTIFF'S REPLY MEMORANDUM
OF LAW IN FURTHER SUPPORT OF MOTION FOR CLASS
CERTIFICATION -22-
CASE NO. 2:11-cv-00988 RJB

NICHOLS KASTER PLLP
80 South Eighth Street, Suite 4600
Minneapolis, Minnesota  55402
TEL. 612.256.3200 • FAX 612.215 6870

law because Lass knew the consequences of failing to obtain additional insurance on her own. If the mortgage did not permit the Bank to force place insurance in an amount greater than the amount of Lass's loan, the Bank's decision to do so—with attendant benefit to itself—would seem to fit any notion of 'unjust.'").

Second, even if Plaintiff was obligated to purchase additional flood insurance, he did so to avoid continuing charges for force-placed insurance. *See Skansgaard Decl., ¶¶ 17, 20-22 & Exs. 14, 17-19.*[24]

Third, the mere fact that BoA believes there is a deficiency in coverage does not mean that BoA has *carte blanche* to arrange for kickbacks for itself or its affiliates in connection with force-placed coverage. *See, e.g., Cannon v. Wells Fargo Bank, N.A.*, 917 F. Supp. 2d 1025, 1053 (N.D. Cal. 2013) ("[E]ven if the force-placed insurance was procured because Plaintiffs failed to pay for their flood insurance, that does not mean that Defendants could do whatever they wanted with respect to the force-placed insurance.... That the force-placed insurance was triggered by Plaintiff's conduct does not negate allegedly inequitable conduct by Defendants.").

Finally, even if this defense had any merit – which it does not – it will apply to every class member who was force-placed, since BoA only force-placed coverage if borrowers did not maintain coverage that met its requirements.  BoA acknowledges the common nature of this defense later in its brief. *Opp. at 56.*

III.    **THE BAIT AND SWITCH CLASS SHOULD BE CERTIFIED**

The Bait and Switch Class also should be certified.  ███████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

---

[24] Ms. McPeters also increased her flood insurance coverage in response to the correspondence that she received from BoA.  *See McPeters Decl., ¶ 16.*

PLAINTIFF'S REPLY MEMORANDUM
OF LAW IN FURTHER SUPPORT OF MOTION FOR CLASS
CERTIFICATION -23-
CASE NO. 2:11-cv-00988 RJB

NICHOLS KASTER PLLP
80 South Eighth Street, Suite 4600
Minneapolis, Minnesota  55402
TEL. 612.256 3200 • FAX 612.215 6870

█████████████████████████████

First, there is a common question of whether BoA had the authority under Paragraph 4 to change the required amount of flood insurance coverage after borrowers had originated their loans.  Second, there is a common question as to whether BoA breached the implied covenant of good faith and fair dealing ████████████████████████████████████████ ████████████████████████  *See Lass*, 695 F.3d at 138 ("[I]f the Bank demanded flood insurance coverage that exceeded the requirements of federal law and the mortgage for the purpose of increasing profits for itself or its affiliates, … its conduct would be at odds with the intended and agreed expectations of the contract.") (internal quotation marks and citation omitted); *Robinson v. Countrywide Credit Indus.*, No. 97-2747, 1997 WL 634502, (E.D. Pa. Oct. 8, 1997), at *3 ("There exist common issues of law or fact, such as whether [the Bank] … inflated the amount of forced placed insurance, and whether it did so to gain improperly inflated commissions.").  Third, there is a common question as to whether BoA breached the Paragraph 7 of the FHA Model Form by increasing the flood coverage requirement ██████████████ █████████████████████████  instead of to protect "the value of the Property and Lender's rights in the Property."  *See Skansgaard Decl, Ex. 1 at 4, ¶ 7*; *see also Kolbe*, 695 F.3d at 123-24; *Lass*, 695 F.3d at 140-41 ("Paragraph 7 states only that 'the Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights.'"); *Hofstetter v. Chase Home Fin., LLC*, 751 F. Supp. 2d 1116, 1127 (N.D. Cal. 2010) ("[The Bank] cannot rely on this so-called 'agreement' to justify the 'change of terms' alleged herein.")

BoA does not address whatsoever in its brief why it increased its flood coverage requirement, or whether it acted in bad faith.  *See Opp. at 35-38*.  Instead, it attempts to shift attention away from its own misconduct by arguing that Plaintiff's excess coverage claims on behalf of the Bait and Switch Class will hinge on each ***borrower's*** state of mind.  *See Opp. at 35* ("this claim … turns on each borrower's understanding").  BoA is mistaken.  As the court in *Yue v. Conseco Life Ins. Co.*, 282 F.R.D. 469 (C.D. Cal. 2012), recently explained:

PLAINTIFF'S REPLY MEMORANDUM
OF LAW IN FURTHER SUPPORT OF MOTION FOR CLASS
CERTIFICATION -24-
CASE NO. 2:11-cv-00988 RJB

NICHOLS KASTER PLLP
80 South Eighth Street, Suite 4600
Minneapolis, Minnesota  55402
TEL. 612.256 3200 • FAX 612.215 6870

Defendant's primary argument is that Plaintiff's claims will require this Court to consider the subjective understanding of each class member at the time each [contract] was issued.  Evidence of that subjective understanding would include what conversations the members had with their sales agents, what illustrations the members were shown, what their annual statements said, and so on, evidence that Defendant contends would be individualized.

The Court does not agree that individualized issues dominate Plaintiff's claims.  Plaintiff has not alleged fraud, misrepresentation, or any other claims or theories that would require a showing of inducement or reliance.  Instead, Plaintiff has alleged claims against Defendant for (1) breach of contract, [and] (2) breach of the covenant of good faith and fair dealing ("bad faith") …. Contrary to Defendant's assertion, it is unlikely that the Court will have to consider the subjective understanding of any class member to assess the merits of these [] claims.

*Id.* at 476 (citations omitted).[25]

The same is true here.  The purportedly "individualized" issues raised by BoA are red herrings.  For example, ████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████ The Bait and Switch Class

---

[25] *See also In re Checking Account Overdraft Litig.*, 275 F.R.D. 666, 680 (S.D. Fla. 2011) ("[I]t is not the case that the individual Plaintiffs' and class members' subjective expectations are necessary to prove their claims.  To the contrary, breach of the duty of good faith and fair dealing may be shown by class-wide evidence of a defendant's subjective bad faith or objectively unreasonable conduct.") (certifying nationwide class as to plaintiffs' breach of contract claim, and Oregon and California subclass as to plaintiffs' claim for breach of the covenant of good faith and fair dealing); *In re Checking Account Overdraft Litig.*, 281 F.R.D. 667, 681 (S.D. Fla. 2012) (same) (certifying nationwide class as to plaintiffs' breach of contract claim, and three subclasses covering 15 other states and the District of Columbia as to plaintiffs' claim for breach of the covenant of good faith and fair dealing); *Ewert*, 2010 WL 4269259, at *7 ("eBay … claims that individualized inquiry into the knowledge of each class member is needed to determine liability for breach of contract.  However, as plaintiffs point out, when there is a standardized agreement like the form contract at issue in this case, the agreement 'is interpreted wherever reasonable as treating alike all those similarly situated, without regard to their knowledge or understanding of the standard terms of the writing.') (citing Restatement (Second) of Contracts § 211(2)); *Menangerie Prods.*, 2009 WL 3770668, at *10-12 (agreeing that "liability for breach of the implied covenant of good faith and fair dealing is a question common to the class, because a party violates the covenant if it subjectively lacks belief in the validity of its act or if its conduct is objectively unreasonable") (internal bracket omitted) (certifying nationwide class as to plaintiff's claims for breach of contract and breach of the covenant of good faith and fair dealing).

PLAINTIFF'S REPLY MEMORANDUM
OF LAW IN FURTHER SUPPORT OF MOTION FOR CLASS
CERTIFICATION -25-
CASE NO. 2:11-cv-00988 RJB

1   is defined to include only Countrywide and CLD borrowers who "were subsequently required by

2   Bank of America to purchase flood insurance … *in excess* of the amount that was required when

3   they originated their loan." *Pl's Memo at 1.*[26]

4       BoA also notes that Legacy Countrywide's CLD required correspondent lenders to

5   require the same level of coverage as the GSEs, "whose guidelines changed over time." *Opp. at*

6   *13 & n. 9.* This is also irrelevant because the class period for the Bait and Switch Class is limited

7   to the period "between July 1, 2008 and March 27, 2013." *Pl's Memo at 1.* By BoA's own

8   admission, the GSE requirements have not changed since December 21, 2007 (*see Opp. at 13-14*

9   *n. 9*), well before the class period for the Bait and Switch Class.

10      BoA further argues that there were "variations in contracts" between borrowers. *Opp. at*

11  *37.* This is simply untrue. The Bait and Switch Class – like all of Plaintiff's proposed classes –

12  is limited by definition to borrowers whose loans were secured by the FHA Model Form. *Pl's*

13  *Memo at 1-2.*

14      BoA also speculates that borrowers may have had unique "interactions with employees."

15  *Opp. at 37.* However, as BoA surely knows (and no doubt has often argued when seeking to

16  enforce its mortgage contracts), oral representations by loan officers have no bearing on the

17  contract between the parties. The parol evidence rule precludes oral modification of notes and

18  deeds of trust by discussions between representatives of the parties prior to and

19  contemporaneously with execution of the mortgage. *In re Colo. Spanish Peaks Ranch, Inc.*, 661

20  F.2d 759 (9th Cir. 1981).[27] BoA argued as much to the First Circuit in *Kolbe. Aggrey Decl., Ex.*

21  _____

    [26] ██████████████████████████████████████████████████████████

22  ██████████████████████████████████████████████████████ This argument is

23  irrelevant for the same reason, namely, that the Bait and Switch Class only includes those
    borrowers who were required by BoA to maintain more flood insurance coverage than was

24  initially required when they originated their loan. *Pl's Memo at 1.*

    [27] *See also, e.g., Sterling Sav. Bank v. Silverton Station, LLC*, No. 10-6121, 2010 WL 4718788,

25  at *3 (D. Or. Nov. 15, 2010) (statute of frauds applies to mortgages contracts, and "exclude[s]
    any evidence of an alleged oral agreement"); *Snyder v. HSBC Bank, USA, N.A.*, 873 F. Supp. 2d

26  1139, 1150 (D. Ariz. 2012) ("[A] mortgage or deed of trust is 'an interest' in real property for

27  purposes of the Statute of Frauds."); *Quinteros v. Aurora Loan Servs.*, 740 F. Supp. 2d 1163,

PLAINTIFF'S REPLY MEMORANDUM
OF LAW IN FURTHER SUPPORT OF MOTION FOR CLASS
CERTIFICATION -26-
CASE NO. 2:11-cv-00988 RJB

NICHOLS KASTER PLLP
80 South Eighth Street, Suite 4600
Minneapolis, Minnesota  55402
TEL. 612.256 3200 • FAX 612.215 6870

1  *At 9, 14-15.*

2       BoA argues that some borrowers "could have understood that flood insurance coverage

3  requirements could increase … from notices and disclosures provided at closing." *Opp. at 36.*

4  This argument also misses the mark. ████████████████████████████████████████████

5  ████████████████████████████████████████████████████████████████████████████████

6  ████████████████████████████████████████████████

7       Finally, as a last gasp, BoA argues that its recently-adopted opt-out policy creates

8  individual issues as to the Bait and Switch Class.[28] However, the opt-out policy is ***irrelevant as***

9  ***a matter of law*** because class members had no duty to opt-out of BoA's heightened flood

10  coverage requirement if that requirement was not legitimately imposed in the first place. *See*

11  *Pl's Memo at 47-48.* BoA does not contest this central point, nor does it distinguish any of the

12  cases cited by Plaintiff to support this fundamental proposition of law. Accordingly, there is no

13  need to conduct factual inquiries regarding why class members did not return the opt-out form,

14  as this question has no legal relevance. To the extent that the opt-out policy has any bearing on

15  the issues before the Court, it simply raises additional class-wide questions regarding: (1)

16  whether, even if BoA could require replacement cost coverage (which it could not), it was truly

17  necessary to protect the Lender's rights in the Property; (2) whether the opt-out policy was

18  adopted in good faith, or was merely a sham;[29] and (3) "whether an 'opt-out' is adequate relief

19

20  1171 (E.D. Cal. 2010) ("A mortgage or deed of trust … comes within the statute of frauds.")

21  (citation omitted); *Ogburn v. Chase Home Fin. LLC*, No. 11-1856, 2011 WL 5599150 (N.D. Ga.

22  Nov. 16, 2011) ("Mortgage agreements and modifications are … subject to the statute of
frauds.").

23  [28] BoA does not argue that its Opt-Out policy has any implications on class certification for any
of the other proposed classes.

24  █████████████████████████████████████████████████████████████████████

25  ████████████████████████████████

26  █

27  █████████████████████████████████████████████████████████████

PLAINTIFF'S REPLY MEMORANDUM
OF LAW IN FURTHER SUPPORT OF MOTION FOR CLASS
CERTIFICATION -27-
CASE NO. 2:11-cv-00988 RJB

NICHOLS KASTER PLLP
80 South Eighth Street, Suite 4600
Minneapolis, Minnesota  55402
TEL. 612.256 3200 • FAX 612.215 6870

[from BoA's flood coverage requirement], particularly … given the affirmative burden that opting out places on borrowers."  *Berger v. Bank of Am., N.A.*, --- F. Supp. 2d ---, 2013 WL 1164497, at *4 (D. Mass. Mar. 21, 2013).[30]

## IV.   THE WASHINGTON CLASSES SHOULD BE CERTIFIED

BoA's arguments against certification of the Washington Over-Insurance Class and Washington Kickback Class (the "Washington Classes") also fall short.

First, BoA's contention that the Washington Classes do not satisfy the numerosity prong of Rule 23 is entirely disingenuous.

PLAINTIFF'S REPLY MEMORANDUM
OF LAW IN FURTHER SUPPORT OF MOTION FOR CLASS
CERTIFICATION -28-
CASE NO. 2:11-cv-00988 RJB

NICHOLS KASTER PLLP
80 South Eighth Street, Suite 4600
Minneapolis, Minnesota 55402
TEL. 612.256 3200 • FAX 612.215 6870

1 ████████████████████████████████████████████████████████████████

2 ████████████████████████████████████████    Because joinder of hundreds of class members would

3 be impractical, the proposed subclasses are sufficiently numerous.  *See, e.g., Rannis v. Recchia*,

4 380 F. App'x. 646, 651, 2010 WL 2124096, at *4 (9th Cir. May 27, 2010) ("In general, courts

5 find the numerosity requirement satisfied when a class includes at least 40 members.").

6       Second, BoA attacks commonality by claiming that the "circumstances of each particular

7 borrower" must be established to determine whether BoA's conduct was unfair or deceptive.

8 *Opp. at 45*.  As discussed *supra* at 8-9, BoA's assertions in this regard are without merit and

9 BoA cites no authority to support its position.  As the Court recognized in denying the motion to

10 dismiss, "Plaintiff's CPA claim turns on the allegation that Defendants forced Plaintiff to obtain

11 insurance in an amount Plaintiff was not contractually obligated to provide."  *Skansgaard v.*

12 *Bank of America, N.A.*, 896 F. Supp. 2d 944, 949 (W.D. Wash. 2011).  It is not necessary to

13 examine the circumstances of any particular borrower, or decide individual issues of fact, to

14 determine whether the FHA Model Form contractually obligated the borrower to provide the

15 amount of insurance BoA forced the borrower to obtain or whether it was unfair for BoA to

16 demand additional flood insurance ████████████████████████████████████████████

17 ████████████████████████████████████    Likewise, whether BoA's commission

18 scheme was unfair has nothing to do with individual borrower circumstances.  "[W]hether an act

19 gives rise to a CPA violation is a question of law."  *Beyer v. Countrywide Home Loans Servicing*

20 *LP*, No. 07-1512, 2008 WL 1791506 (W.D. Wash. 2008) (citing *Dwyer v. J.I. Kislak Mortg.*

21 *Corp.*, 103 Wash. App. 542, 546 (2000)).  Here, the Court need only look at the contract and

22 BoA's uniform behavior.  *See Indoor Billboard/ Wash., Inc. v. Integra Telecom of Wash.,*

23 *Inc.*,162 Wash. 2d 59, 75 (2007) (holding that conduct was unfair or deceptive as a matter of law

24 because there was no dispute over how the defendant listed the offensive fee).

25       The requirement to prove causation does not present individual issues that would

26 overwhelm the common issues.  In *Indoor Billboard*, cited by BoA (*Opp. at 45*), the Washington

27

PLAINTIFF'S REPLY MEMORANDUM
OF LAW IN FURTHER SUPPORT OF MOTION FOR CLASS
CERTIFICATION -29-
CASE NO. 2:11-cv-00988 RJB

**NICHOLS KASTER PLLP**
80 South Eighth Street, Suite 4600
Minneapolis, Minnesota  55402
TEL. 612.256.3200 • FAX 612.215.6870

Supreme Court held that a CPA plaintiff "must establish that, but for the defendant's unfair or deceptive practice, the plaintiff would not have suffered an injury." 162 Wash. 2d at 84. Here, Plaintiff will prove causation on a class-wide basis by proving that each member of the proposed subclass was *forced* by BoA to purchase more flood insurance than was required by their form FHA mortgage contract, and BoA did this to increase its premium revenue.[31]

The cases cited by BoA also do not support its position. For instance, BoA contends that this case is like *Wright v. Fred Hutchinson Cancer Research Center,* No. 01-5217, 2001 WL 1782714 (W.D. Wash. 2001). *Opp. at 46 n. 36.* However, that case is dramatically different. There, the court had insufficient evidence to determine whether the proposed class plaintiffs' claims were typical in a case in which the class members "came to the Fred Hutchinson Cancer Research Center with different expectations and prognoses, had individual consent consultations, received advice from their own physicians, [and] participated in different trials with varying treatment regimens, signed different consent forms . . . ." *Id.* at *2.

BoA's additional arguments regarding the effect of its Opt Out program and Plaintiff's purported lack of typicality are nothing more than a rehash of its arguments against the proposed nationwide classes. Accordingly, BoA has not demonstrated that class action treatment is inappropriate, and the Washington Classes should be certified.

## V.   STATE LAW DIFFERENCES DO NOT PRECLUDE CERTIFICATION OF A NATIONAL CLASS

BoA also argues that Plaintiff has not established predominance because trial of Plaintiff's claims will involve application of different states' laws. However, this argument should be rejected for at least three reasons: (1) the FHA Model Form is a federal form with

---

[31] BoA's contention that some borrowers may have "wanted full replacement cost flood insurance coverage" (*Opp. at 46*) misses the point. The fact that some borrowers may have preferred replacement cost coverage on their house does not mean BoA could force upon borrowers unauthorized coverage at excessive charges so that BoA and its affiliates could profit handsomely. Moreover, if some borrowers did prefer replacement cost coverage, they were free to do so of their own volition and that in no way supports BoA's positions that it was entitled to implement its the illicit force-placed flood insurance scheme in a uniform and automated way onto all borrowers in its servicing portfolio.

PLAINTIFF'S REPLY MEMORANDUM
OF LAW IN FURTHER SUPPORT OF MOTION FOR CLASS
CERTIFICATION -30-
CASE NO. 2:11-cv-00988 RJB

NICHOLS KASTER PLLP
80 South Eighth Street, Suite 4600
Minneapolis, Minnesota  55402
TEL. 612.256 3200 • FAX 612.215 6870

uniform covenants that are meant to be interpreted in a uniform manner nationwide; (2) to the extent that state law variations are relevant to the interpretation of the FHA Model Form, those variations (if any) are limited; and (3) Plaintiff has accounted for any differences in state law, and has proposed a workable plan for addressing them through the use of a Special Jury Verdict Form. The fact that different courts in different jurisdictions have reached different interpretations of Paragraph 4 has nothing to do with variations in state contract law, and only serves to underscore the need to certify a nationwide class, so that borrowers are treated consistently and the FHA Model Form is interpreted in a uniform manner. Principles of comity hardly require balkanized adjudication of the common issues in this case, with varying results from one jurisdiction to the next.

### A.    The FHA Model Form Contains Uniform Covenants That Are Meant To Be Uniformly Interpreted Nationwide Under Federal Law

The first flaw in BoA's argument is that it presupposes that state law differences are relevant to the interpretation of a uniform covenant in a federal mortgage form (the FHA Model Form). The relevant choice of law provision in the FHA Model Form states: "This Security Instrument shall be governed by *Federal law* and the law of the jurisdiction in which the Property is located." *Skansgaard Decl., Ex. 1 at ¶ 14* (emphasis added). According to HUD's *amicus* brief in *Kolbe*, which BoA cites extensively in its Opposition (*Opp. at 12 n.8, 13, 17, 17 n.2, 18 n.13*), this choice of law provision operates such that federal law applies to the uniform covenants in the mortgage (such as the covenant to maintain flood insurance), and state law applies to any non-uniform covenants for particular states that appear at the end of the mortgage (which are not at issue here):

> **[T]he interpretation of Paragraph 4 [of the FHA Model Mortgage Form] is properly a matter of federal law**. The mortgage's choice-of-law clause provides that the contract is "governed by federal law and the law of the jurisdiction in which the Property is located." State law may govern the portions of the standard FHA mortgage contract that vary from state to state, but **it would make little sense for the meaning of a uniform provision prescribed by a federal agency as a nationwide condition of participation in a federal program to depend on the content of state law**.

PLAINTIFF'S REPLY MEMORANDUM
OF LAW IN FURTHER SUPPORT OF MOTION FOR CLASS
CERTIFICATION -31-
CASE NO. 2:11-cv-00988 RJB

**NICHOLS KASTER PLLP**
80 South Eighth Street, Suite 4600
Minneapolis, Minnesota  55402
TEL. 612.256 3200 • FAX 612.215 6870

*Lindenbaum Decl., Ex. 6 at 13-14 n.3* (emphasis added).  Thus, although the parties strongly disagree as to the proper interpretation of Paragraph 4 (a common, class-wide issue), there is universal agreement – between Plaintiff, BoA, and HUD – that the FHA Model Form should be given a uniform interpretation, not 50 different interpretations.  *See Aggrey Decl, Ex. A at 7* (arguing that the meaning of a "uniform covenant" should be "determined as a matter of law," and that such form contracts can have "only one meaning," *i.e.,* a "uniform meaning" for a "uniform covenant").  Accordingly, differences in state law are not a barrier to certification of a nationwide class because the uniform covenants in the FHA Model Form (such as Paragraph 4) are meant to be interpreted in a uniform manner nationwide under federal law.

> ### B.   To the Extent that State Law Applies, Any Variations in State Contract Law Are Insignificant

Even if state law were relevant to the interpretation of the uniform covenants in the FHA Model Form (which they are not), BoA "overstates the extent of any variations in state contract law." *Conseco*, 270 F.R.D. at 529 (certifying nationwide class).  Although BoA cherry-picks a few purported differences in state law, the relevant question is not whether there are ***any*** differences in state law, but rather whether such differences ***predominate***.  They do not.  "At best, [BoA] has pointed to isolated and relatively minor variations that may be handled at trial 'by grouping similar state laws together and applying them as a unit.'"  *Conseco*, 270 F.R.D. at 529 (quoting *In re Prudential Ins. Co. Am. Sales Prac. Litig.,* 148 F.3d 283, 315 (3d Cir.1998)).  Accordingly, the purported state law differences "are not sufficiently anomalous to deny class certification."  *Hanlon*, 150 F.3d at 1022; *see also Pls' Memo at 21* (citing additional authorities).[32]

---

[32] On this issue, the arguments that BoA does ***not*** make speak volumes.  Notably, BoA does ***not*** challenge the accuracy of Plaintiff's presentation on the elements of his common law claims.  BoA also does ***not*** meaningfully dispute that the elements of Plaintiff's claims are largely uniform among the fifty states.  Finally, BoA does ***not*** dispute that the Court can manage any variations at trial by use of a special verdict form, although BoA claims that Plaintiff's plan for trying the claims is not sufficiently specific.

PLAINTIFF'S REPLY MEMORANDUM
OF LAW IN FURTHER SUPPORT OF MOTION FOR CLASS
CERTIFICATION -32-
CASE NO. 2:11-cv-00988 RJB

**NICHOLS KASTER PLLP**
80 South Eighth Street, Suite 4600
Minneapolis, Minnesota  55402
TEL. 612.256 3200 • FAX 612.215 6870

**1.   Breach of Contract**

As Plaintiff noted in his opening brief, contract law does not materially vary between the states.  *See Pls' Memo at 44-45* (citing authorities); *accord*, *Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 75 (E.D.N.Y. 2004) ("[T]he plaintiff's breach of contract claim involves … general principles of contract interpretation that do not differ materially from one jurisdiction to the next."); *Enfield v. Old Line Life Ins. Co. of Am.*, 136 N.M. 398, 402 (2004) (certifying nationwide class for a breach of contract claim because "the law of breach of contract is uniform enough that our traditional notions of fair play and justice would not be offended by litigating the issue under [our state's] law") (citations omitted).  The distinctions BoA attempts to manufacture regarding state contract law hardly predominate over the commonalities.[33]

For example, BoA points to alleged state law differences regarding the use of extrinsic evidence in contract cases.  However, the *Conseco* court expressly rejected this as a basis for denying nationwide class certification.  *See Conseco*, 270 F.R.D. at 529.  Moreover, the issue that BoA raises with respect to extrinsic evidence – whether an NSFH is part of the mortgage contract (*Opp. at 51*) – is a red herring because Plaintiff's class-wide claims are based on the FHA Model Form, not an NSFH.  In any event, BoA has not identified any actual variation in

---

[33] Notably, ***none*** of the cases that BoA cites (*Opp. at 51-52*) to argue that state law variations on contract interpretation undermine predominance concerned ***form*** contracts such as the FHA Model Form, and many of those decisions turned on novel legal issues not present here.  *See Fosmire v. Progressive Max Ins. Co.*, 277 F.R.D. 625, 635 (W.D. Wash. 2011) (state law variations on contract interpretation "must be evaluated in light of the differing contract language in each of the [seventeen] policy forms" at issue; the case turned on novel legal issue undecided in 23 of the 24 states included in the proposed class); *Hovenkotter v. SAFECO Ins. Co. of Ill.*, No. 09-0218, 2010 WL 3984828, at *7 (W.D. Wash. Oct. 11, 2010)  (denying certification due to "many differences" among policies included in the class, which would exacerbate state law variations; the case turned on novel legal issue undecided in 27 of 28 states included in the proposed class); *Ritti v. U-Haul Int'l, Inc.,* No. 05-4182, 2006 WL 1117878, at *13-14 (E.D. Pa. Apr. 26, 2006) (variations in contract law were material because "there [was] no single rental agreement at issue" and "each Class member [would] base his claim on a unique contract," many of which were "oral"); *CLN Props., Inc. v. Republic Servs., Inc.*, No. 09-1428, 2010 WL 5146734, at *7-8 (D. Ariz. Dec. 13, 2010) (state law variations on contract formation were significant because there was no form contract at issue but instead a "wide variety of contracts with Defendant, and some [class members] had no written contracts at all").

PLAINTIFF'S REPLY MEMORANDUM
OF LAW IN FURTHER SUPPORT OF MOTION FOR CLASS
CERTIFICATION -33-
CASE NO. 2:11-cv-00988 RJB

NICHOLS KASTER PLLP
80 South Eighth Street, Suite 4600
Minneapolis, Minnesota  55402
TEL. 612.256 3200 • FAX 612.215 6870

1   state law with regard to extrinsic evidence.[34]

2       BoA also argues that "a breaching party cannot maintain a breach of contract action" in

3   some states.  *Opp. at 52.*  However, this defense has no bearing on Plaintiff's claim that BoA

4   breached Paragraph 4 of the FHA Model Form by requiring excessive amounts of flood

5   insurance coverage.  To the extent that BoA demanded more coverage than was required under

6   Paragraph 4, class members did not "breach" the FHA Model Form by maintaining less

7   coverage.  Therefore this purported "defense" adds nothing to the legal analysis.  Moreover, even

8   if class members were in breach of the insurance requirements of the FHA Model Form, this

9   would not constitute a defense to Plaintiff's claim that BoA breached the remedy provisions of

10  the mortgage by arranging for kickbacks for itself and its affiliates in connection with force-

11  placed insurance.  Even in states that recognize a "first breach" defense, a borrower may sue for

12  breach of contract where the lender/servicer oversteps its authority under the remedy provisions

13  of the mortgage in the event of a breach.  *See, e.g., Pfeifer v. Countrywide Home Loans, Inc.*, 211

14  Cal. App. 4th 1250, 1279 (2013); *Mathews v. PHH Mort. Corp.*, 283 Va. 723, 729-33 (2012).

15  To apply the doctrine of first breach in this context would "defy common sense" because it

16  would render the remedy provisions of the mortgage meaningless and grant the lender *carte*

17  *blanche* to take whatever measures it wanted (however abusive) in the event of a breach by the

18  borrower.  *Mathews*, 283 Va. at 732.

19      BoA's mitigation of damages defense also fails to defeat class certification.  *See*

20  *Easterling v. Conn. Dep't of Corr.*, 278 F.R.D. 41, 50 (D. Conn. 2011) ("individual mitigation

21

22  [34] BoA's primary example of this supposed variation is Illinois law, which BoA contends
    diverges from Oregon law as applied by the court in *Arnett*.  *Opp. 51-52.*  However, the case
23  BoA cites, *Atl. Mut. Ins. Co. v. Metron Eng'g & Constr. Co.*, 83 F.3d 897, 901–02 (7th Cir.
    1996), did not address the same question the *Arnett* court addressed – when two documents may
24  together form a single contract.  Rather, that case concerned whether a contract incorporates
    another document by reference – a different issue.  On the relevant issue, whether extrinsic
25  evidence may be considered where a contract is ambiguous, Illinois law is consistent with the
    law of other states, and recognizes that extrinsic evidence may be considered in appropriate cases
26  if the contract is ambiguous. *See Defs' Memo at 52* (citing *Atl. Mut. Ins. Co.*, 83 F.3d at 901-02).

27

PLAINTIFF'S REPLY MEMORANDUM
OF LAW IN FURTHER SUPPORT OF MOTION FOR CLASS
CERTIFICATION -34-
CASE NO. 2:11-cv-00988 RJB

NICHOLS KASTER PLLP
80 South Eighth Street, Suite 4600
Minneapolis, Minnesota  55402
TEL. 612.256 3200 • FAX 612.215 6870

issues" do not defeat predominance because they "are less substantial than the issues that will be subject to generalized proof"); *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 139 (2d Cir. 2001) (same).  The question of whether customers had a duty to mitigate their damages by voluntarily purchasing insurance is a class-wide question, and BoA has not identified any substantive difference in state law on this issue.

Finally, variations in statutes of limitation do not defeat predominance.  *See, e.g.*, *Conseco*, 270 F.R.D. at 530 n.8 (citing *Cameron v. E. M. Adams & Co.*, 547 F.2d 473, 477-48 (9th Cir. 1976)); *Steinberg*, 224 F.R.D. at 78 ("Courts have been nearly unanimous…in holding that possible differences in the application of a statute of limitations to individual class members…does not preclude certification.").  Indeed, this defense is particularly immaterial here because the proposed class period only dates back to July 1, 2008, less than three years prior to the filing of the complaint on May 17, 2011.  Plaintiff has submitted a chart setting forth the statutes of limitations for his claims in each state.  *See Second Richter Decl., Ex. 3*.  Notably, no state imposes a limitations period on contract claims that is shorter than three years.  *Id.*; *see also BoA's App'x A at 3; Opp. at 53*.  Accordingly, any variation in state law as to the limitations period is irrelevant.

To the extent that any of these purported differences in state law are significant (and they are not), they can be addressed through the use of a Special Verdict Form.  *See Second Richter Decl., Ex. 2*.  Moreover, even if a Special Verdict Form were not adequate to address such differences (which it is), this Court should, at the very least, certify a multi-state class as to those states which apply their contract law in the same manner or a substantially similar manner as Washington.[35]

---

[35] Other courts have specifically noted that Washington contract law is similar to contract law in other states.  *See, e.g.*, *Verzani v. Costco Wholesale Corp.*, 641 F. Supp. 2d 291, 298 (S.D.N.Y. 2009) *aff'd*, 387 F. App'x 50 (2d Cir. 2010) ("[T]he elements for stating a claim for breach of contract are the same in **New York** and **Washington**…"); *Fin. Pac. Leasing, LLC v. Prairie Emergency Servs., S.C.*, 12-CV-7533, 2013 WL 3421884, at *3 (N.D. Ill. July 8, 2013) ("**Washington** contract law is substantially similar to **Illinois** contract law."); *Zody v. Microsoft Corp.*, C-12-00942-YGR, 2013 WL 2468250, at *5 n.5 (N.D. Cal. June 7, 2013) ("[T]he

PLAINTIFF'S REPLY MEMORANDUM
OF LAW IN FURTHER SUPPORT OF MOTION FOR CLASS
CERTIFICATION -35-
CASE NO. 2:11-cv-00988 RJB

NICHOLS KASTER PLLP
80 South Eighth Street, Suite 4600
Minneapolis, Minnesota  55402
TEL. 612.256 3200 • FAX 612.215 6870

**2.     Breach of the Implied Covenant of Good Faith and Fair Dealing**

State law is also "relatively uniform" as to the implied covenant of good faith and fair dealing. *In re Checking Account Overdraft Litig.*, 281 F.R.D. at 680 n.12, 681. The distinctions that BoA draws are not significant.

*First*, BoA does not attempt to explain why it matters whether an implied covenant claim is "independent" or "part and parcel of a contract claim." *Opp. at 53*. This is a distinction without meaning. *See Morris*, 2012 WL 3929805, at *8 (holding that Pennsylvania does not recognize an "independent cause of action" for breach of the covenant of good faith and fair dealing, but further holding that plaintiff's allegations regarding breach of the implied covenant "augmented" her breach of contract claim and could be pursued as part of that claim, where plaintiff alleged that defendant required excessive flood insurance coverage and accepted improper kickbacks in connection with force-placed coverage).

*Second*, BoA's assertion that Pennsylvania does not recognize the implied covenant absent a "special relationship" between the parties is also belied by the court's holding in *Morris*.

---

elements for breach of contract are substantially similar in **Washington** and **California** . . . ."); *In re JPMorgan Chase Mort. Modification Litig.*, 880 F. Supp. 2d 220, 225 n.1, 233 n.21 (D. Mass. 2012) (noting the contract laws of **California**, **Florida**, **Illinois**, **Indiana**, **Massachusetts,** **Michigan**, **Minnesota**, **Missouri**, **New Jersey**, **Nevada**, **New York**, **Ohio**, **Pennsylvania**, and **Washington** "rarely differ[] in substance"); *United States v. Two Bank Accounts Described as Bank Account In Amount of $197,524.99 Bank of Am. Seattle, Wash.*, CIV. 06-4016-KES, 2009 WL 803615, at *3 n.2 (D.S.D. Mar. 24, 2009) ("**Arizona**, **Washington**, and **Wisconsin** all recognize similar rules of contract interpretation."); *Flanagan v. Allstate Ins. Co.*, 242 F.R.D. 421, 431-32 *modified on other grounds*, 242 F.R.D. 434 (N.D. Ill. 2007) (finding that **Arizona**, **Michigan**, **Pennsylvania**, **Florida**, **Washington**, **New York**, **Colorado**, and **Illinois'** "breach of contract laws are sufficiently similar to allow for certification" and that "[b]ecause these state laws are very similar, if not identical, we find the predominance requirement satisfied"); *Boise Tower Assocs., LLC v. Wash. Capital Joint Master Trust*, CV 03-141-S-MHW, 2006 WL 1749656, at *16 (D. Idaho June 22, 2006) ("Other than a few semantical differences, the approach to contract interpretation in **Washington**, as compared to **Idaho**, is much the same.); *Anderson v. Fel-Pro Chem. Products, L.P.*, No. 95-4604, 1996 WL 33410082, at *5 (N.D. Ill. Dec. 19, 1996) ("Both **Illinois** and **Washington** require proof of the same elements in order to establish breach of contract . . . ."); *Or.-Pac. Forest Prod. Corp. v. Welsh Panel Co.*, 248 F. Supp. 903, 909 (D. Or. 1965) (**Oregon** and **Washington**).

**NICHOLS KASTER PLLP**
80 South Eighth Street, Suite 4600
Minneapolis, Minnesota  55402
TEL. 612.256 3200 • FAX 612.215 6870

*Id.* at *8 ("The covenant is presumed to exist in every contract governed by Pennsylvania law.").

**Third**, BoA asserts that many states hold there is no implied covenant claim where a contract bestows a party with "absolute discretion." *Opp. at 53*. However, this argument ignores the fact BoA did not have discretion, much less absolute discretion, to require more flood insurance than the Secretary of HUD under Paragraph 4, and even if it did have discretion under Paragraph 4, it certainly did not have the right to require additional flood insurance simply to generate more commission income for itself and its affiliates. *See Order Denying Motion to Dismiss at 5-6*; *accord*, *Lass*, 695 F.3d at 138, *Kolbe*, 695 F.3d at 123-24.

**Fourth,** the absence of good faith is, by definition, a common element of a claim for breach of the implied covenant of good faith and fair dealing in every state. To the extent that states differ as to whether good faith is measured by a subjective or objective standard, the Special Verdict Form can easily ask the jury to make separate determinations under both standards. *See Second Richter Decl., Ex. 2*.

**Finally,** the statute of limitations issue BoA again raises is a red herring for the same reasons noted above with respect to Plaintiff's breach of contract claim. *See supra* at 35.

Accordingly, state law variations on the implied covenant do not defeat predominance.[36]

---

[36] The cases BoA cites where courts have refused to certify multistate classes on implied covenant claims (*Opp. at 54 n. 53*) are not on point. Two of those cases applied a heightened certification standard not applicable in this circuit. In *Woodard v. Fidelity Nat. Title Ins. Co.*, No. 06-1170, 2008 WL 5737364, at *1 (D.N.M. Dec. 8, 2008), the court applied a "strict burden of proof," requiring the plaintiff to show that the requisites for certification were "clearly met." In this Circuit, plaintiffs need only establish certification "by a preponderance of the evidence." *See, e.g.*, *Cottle-Banks v. Cox Comms., Inc.*, No. 10-2133, 2013 WL 2244333, at *5 (S.D. Cal. May 21, 2013) ("[D]istrict courts [in the Ninth Circuit] have applied the preponderance of the evidence standard as to the Rule 23 requirements.") (collecting authorities). Similarly, in another case on which BoA relies, *Yarger v. ING Bank, FSB*, 285 F.R.D. 308, 325-26 (D. Del. 2012), the court denied certification because the plaintiffs had "failed to meet their burden of establishing that there is not a material variation among the breach of implied covenant laws." However, in this Circuit, even "significant differences" in state law will not defeat predominance if such variations are manageable. *Conseco*, 270 F.R.D. at 529. Finally, the plaintiffs in BoA's other cited cases, *Payne v. FujiFilm U.S.A., Inc.*, 2010 WL 2342388, at *10 (D.N.J. May 28, 2010) and *Lane v. Wells Fargo Bank, N.A.*, No. C 12-04026 (N.D. Cal. June 21, 2013), failed to present any plan whatsoever on management of state law variations. Indeed, in *Lane*, the plaintiff failed

PLAINTIFF'S REPLY MEMORANDUM
OF LAW IN FURTHER SUPPORT OF MOTION FOR CLASS
CERTIFICATION -37-
CASE NO. 2:11-cv-00988 RJB

NICHOLS KASTER PLLP
80 South Eighth Street, Suite 4600
Minneapolis, Minnesota  55402
TEL. 612.256 3200 • FAX 612.215 6870

Indeed, several courts have specifically recognized that Washington law is consistent with other states with respect to the implied covenant of good faith and fair dealing.  *See, e.g.,  Cook Inc. v. Boston Scientific Corp.*, 01 C 9479, 2002 WL 335314, at *5 (N.D. Ill. Feb. 28, 2002) (noting similarities in Washington and Illinois' treatment of the covenant); *Dorsey v. N. Life Ins. Co.*, CIV.A. 04-0342, 2005 WL 2036738 (E.D. La. Aug. 15, 2005) (noting similarities between Washington and Louisiana law on the implied covenant); *Idaho First Nat. Bank v. Bliss Valley Foods, Inc.*, 121 Idaho 266, 288, 824 P.2d 841, 863 (1991) (noting that Idaho's law on the duty of good faith and fair dealing is consistent with Washington's); *Bybee Farms LLC v. Snake River Sugar Co.*, CV-06-5007-FVS, 2008 WL 3546506 (E.D. Wash. Aug. 8, 2008) (same).

### C.    Plaintiff Presents a Realistic Plan for Managing Any State Law Variations

In his class certification motion papers, Plaintiff included a detailed analysis of the elements of his contract claims in all 50 states, and described an approach (which is consistent with the law of this Circuit) to manage any variations through the use of a special jury verdict form.  *See Pl's Memo at 45-46.*  In doing so, Plaintiff met his burden of setting forth a realistic plan for trial of the claims in this case.  To allay any remaining concerns, however, Plaintiff has submitted a detailed trial plan explaining how the Court can manage any variations in state law before, during, and after trial, as well as a sample special jury verdict form illustrating how Plaintiff's class claims may be put to the jury.  *See Second Richter Decl., Exs. 1-2.*  These materials demonstrate that any variations in state law are manageable and that this case can be efficiently litigated on a nationwide class basis.  *See, e.g., In re Checking Account Overdraft Litig.*, 275 F.R.D. at 680 ("The proposed special verdict forms and supporting surveys of law submitted by Plaintiffs with their Trial Plan illustrate that the variations among the potentially applicable state laws are not material and can be managed to permit a fair and efficient adjudication by the fact finder at trial."); *Overka v. Am. Airlines, Inc.*, 265 F.R.D. 14, 20 (D.

---

entirely to address variations in state law or to present a plan to manage such variations.  *Lane,* 2013 WL 3187410, at *4.  Here, Plaintiff set forth a viable plan in his initial motion and details it further with this Reply.  *See Second Richter Decl., Exs. 1-2.*

PLAINTIFF'S REPLY MEMORANDUM
OF LAW IN FURTHER SUPPORT OF MOTION FOR CLASS
CERTIFICATION -38-
CASE NO. 2:11-cv-00988 RJB

NICHOLS KASTER PLLP
80 South Eighth Street, Suite 4600
Minneapolis, Minnesota  55402
TEL. 612.256 3200 • FAX 612.215 6870

Mass. 2010) ("[T]he Court will put before the jury a core claim composed of the elements common to all jurisdictions. Because in some jurisdictions there are additional elements required to establish liability, the Court will ask the jury special questions in accordance with any additional elements."); *accord*, *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 594 (9th Cir. 2012) (state law differences may be addressed by using "different jury instruction[s] for materially different bodies of state law"); *Conseco*, 270 F.R.D. at 529 (differences in state law may be handled at trial "by grouping similar state laws together and applying them as a unit") (quoting *In re Prudential Ins. Co. Am. Sales Prac. Litig.,* 148 F.3d at 315). [37]

### D.   Principles of Comity Do Not Preclude Nationwide Certification

BoA's contention that principles of comity (as opposed to differences in state law) prevent nationwide certification is meritless.   The Ninth Circuit has made clear that "[t]he doctrine of stare decisis does not compel one district court judge to follow the decision of

---

[37] As noted in Plaintiff's opening brief, several force-placed insurance cases have been certified on a nationwide basis, some of which have involved common law claims. *See Pl's Memo at 3 n. 3*. Although some force-placed insurance classes have been limited to borrowers in a particular state, those cases involved unique situations not present here and classes that were not limited to borrowers with the same standardized contract (such as the FHA Model Form). For example, the plaintiffs in *Williams*, 280 F.R.D. at 669, voluntarily limited the scope of their proposed class to Florida borrowers ***and the class was not limited to borrowers with the same contract***. Likewise, the plaintiffs in *Wahl v. Am. Sec. Ins. Co.*, No. 08-00555, 2010 WL 1881126 (N.D. Cal. May 10, 2010) only sought certification of a California Class because they asserted a single claim at the time of their motion under California's Unfair Competition Law. *See id.* at *8. In addition, ***the Wahl class was not limited to borrowers with the same contract***. The only force-placed insurance case in which the court certified a statewide class in lieu of a nationwide class is *Lane*, 2013 WL 3187410, where, again, ***the class was not limited to borrowers with the same contract***. *Lane* is also distinguishable due to the inadequacy of plaintiffs' counsel in that case. As the *Lane* court noted: "[p]laintiffs' initial motion did not even address the issue of state-law variances." *Id.* at *4. And, in their reply, they "merely identifie[d] the states that purportedly allow stand-alone causes of action for breach of the implied covenant." *Id.* As a result, the court found that there were "serious questions" regarding the adequacy of the *Lane* plaintiffs' counsel, and the court issued a notice inviting applications from other counsel to represent the class. *Id.* at *14-15. Here, unlike in the above three cases, Plaintiff has voluntarily and purposefully limited the proposed classes to include only borrowers with a closed-end FHA mortgage.   This is a meaningful difference between this case and the classes that were certified in *Williams*, *Wahl* and *Lane*.   Nationwide certification is appropriate here because this case addresses BoA's conduct concerning a standardized form contract that was the same for all borrowers in the country.

PLAINTIFF'S REPLY MEMORANDUM
OF LAW IN FURTHER SUPPORT OF MOTION FOR CLASS
CERTIFICATION -39-
CASE NO. 2:11-cv-00988 RJB

NICHOLS KASTER PLLP
80 South Eighth Street, Suite 4600
Minneapolis, Minnesota  55402
TEL. 612.256 3200 • FAX 612.215 6870

another." *In re Silverman*, 616 F.3d 1001, 1005 (9th Cir. 2010) (quoting *Starbuck v. City and County of San Francisco,* 556 F.2d 450, 457 n. 13 (9th Cir. 1977)); *see also Rodgers v. Cent. Locating Serv., Ltd.*, 412 F. Supp. 2d 1171, 1177 n. 2 (W.D. Wash. 2006) (same).[38]  This Court is in no way bound by the decisions of other district courts relating to the interpretation of Paragraph 4.

The fact that different courts have interpreted Paragraph 4 of the FHA Model Form differently is simply not a reason to deny nationwide certification.[39]  To the contrary, this difference of opinion demonstrates that there is a *bona fide* legal issue that should be resolved on a class-wide basis for all class members in a single proceeding.  This would avoid inconsistent rulings, ensure fairness in the treatment of class members, and preserve judicial resources.  After the Breach of Paragraph 4 Over-Insurance Class is certified, this legal issue can be efficiently decided for the entire class either at the summary judgment stage or at trial.

## VI.   BoA's PURPORTED AFFIRMATIVE DEFENSES DO NOT DEFEAT CLASS CERTIFICATION

In a further effort to distract the Court's attention from the overwhelmingly common class-wide issues, BoA lists a grab bag of affirmative defenses that it allegedly "could" assert, and contends that those purported affirmative defenses will require individualized inquiries. *Opp. at 54-60.*  However, these purported defenses do not defeat class certification.

---

[38] The cases cited by BoA are not to the contrary.  *Opp. at 50.*  In those cases, appellate courts in other jurisdictions had already ruled on the questions at issue, and those courts exercised their discretion not to intrude upon those appellate rulings.  No conflicting appellate authority exists with regard to Plaintiff's claims.

[39] While BoA points to district courts that have found Paragraph 4 to permit the conduct at issue, it ignores that several other cour

ts have reached the same conclusion this Court reached in denying BoA's motion to dismiss – that Plaintiff's interpretation of Paragraph 4 is a reasonable one.  *See Kolbe,* 695 F.3d at 117-122; *Casey*, 915 F. Supp. 2d at 262; *Morris*, 2012 WL 3929805, *6-8; *Wulf*, 798 F. Supp. 2d at 591-94.  Moreover, as BoA notes, both the *Kolbe* and *Feaz* cases remain on appeal, and therefore, no final judgment has been entered in those cases.  It is also worth noting that none of those actions have been certified yet, meaning that any rulings in those cases only apply to the named plaintiffs in those actions.

PLAINTIFF'S REPLY MEMORANDUM
OF LAW IN FURTHER SUPPORT OF MOTION FOR CLASS
CERTIFICATION -40-
CASE NO. 2:11-cv-00988 RJB

NICHOLS KASTER PLLP
80 South Eighth Street, Suite 4600
Minneapolis, Minnesota  55402
TEL. 612.256.3200 • FAX 612.215.6870

"Courts have traditionally been reluctant to deny class action status as failing the predominance requirement of Rule 23(b)(3) simply because affirmative defenses may be available against individual members." *Avilez*, 286 F.R.D. at 466-67 (internal quotation marks and citation omitted). Thus, "the fact [that] affirmative defenses may be available against certain prospective class members does not defeat class certification." *Rodriguez v. ACL Farms, Inc.,* No. 10-3010, 2010 WL 4683771, at *2 (W.D. Wash. Nov. 12, 2010) (citing *Smilow*, 323 F.3d at 39); *see also Kelly v. City & County of San Francisco*, No. 05-1287, 2005 WL 3113065, *3 (N.D. Cal. Nov. 21, 2005); 7A FEDERAL PRACTICE & PROCEDURE § 1778 (3d ed. 2005) ("[T]he action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.").[40]

In other class actions related to force-placed insurance, courts have rejected similar affirmative-defense-based challenges to predominance.   For example, in *Williams*, the court rejected Wells Fargo's argument that "individuated defenses to groups within the proposed class should defeat certification." *Williams*, 280 F.R.D. at 674-75.[41]   Likewise, the court in *Lane* also rejected these affirmative defenses as a basis for opposing class certification:

> Defendant contends that defenses of waiver, estoppel, and laches may apply, or that the voluntary payment doctrine may bar individual claims. Defendant does not contest, however, that it applied the same policies and procedures for force-placing flood and hazard insurance to all loans it serviced …. The success or failure of the potential defenses is susceptible to common methods of proof. The basic facts are common to the class: class members had similar contracts and received the same form notice of lapsed insurance; they failed to act in response to receiving multiple notices; defendant eventually force-placed insurance … on class members' properties; defendant then charged class members an allegedly inflated premium for the insurance and received a percent of the premium as a

---

[40] "This is particularly true given the range of procedural mechanisms available to courts to deal with potentially individualized affirmative defenses."  2 NEWBERG ON CLASS ACTIONS § 4:55 (5th ed. 2012).

[41] The *Williams* court specifically distinguished *Vega*, 564 F.3d at 1274, upon which BoA relies here, finding that the individualized inquiry needed in *Vega* was unnecessary in the force-placed insurance context.

PLAINTIFF'S REPLY MEMORANDUM
OF LAW IN FURTHER SUPPORT OF MOTION FOR CLASS
CERTIFICATION -41-
CASE NO. 2:11-cv-00988 RJB

NICHOLS KASTER PLLP
80 South Eighth Street, Suite 4600
Minneapolis, Minnesota  55402
TEL. 612.256.3200 • FAX 612.215.6870

1
2
3

> commission or kickback …. Whether and to what extent class members were adequately warned of the commissions, could have avoided the force-placement of insurance (and payment of the commission), or accepted the benefits of the force-placed insurance is a matter for trial, or summary judgment, based on common methods of proof.

4   *Lane*, 2013 WL 3187410, at *8.

5       The question is not, as BoA states, whether there are any affirmative defenses "which

6   would require individualized inquiry to resolve." *Opp. at 55.* Rather, "the real question for the

7   district court [is] whether the common issues of liability predominate over the individual issues

8   raised by [Defendant's] affirmative defenses." *Allapattah Servs., Inc.*, 333 F.3d at 1261.  In this

9   case (like *Williams* and *Lane*), the common issues heavily predominate, and none of the

10  affirmative defenses raised by BoA present a genuine obstacle to class certification.

11      **A.     The Voluntary Payment Doctrine and "Mitigation of Damages"**

12      BoA's first two asserted affirmative defenses focus on whether class members were

13  force-placed "voluntarily," or "voluntarily" paid for force-placed coverage.  *See Opp. at 55-56.*

14  This "voluntariness" defense is meritless, for at least two reasons.  First, the very notion of

15  "voluntary" force-placed coverage is an oxymoron.  Coverage is only force-placed because

16  borrowers do not want such coverage and have not purchased it on their own.  Second, BoA can

17  hardly blame class members for refusing to purchase excessive amounts of flood insurance

18  coverage that was not required by their mortgage agreements.  *See Lass*, 695 F.3d at 141 ("Little

19  need be said about the Bank's assertion that any retention of a benefit was not inequitable as a

20  matter of law because Lass knew the consequences of failing to obtain additional insurance on

21  her own. If the mortgage did not permit the Bank to force place insurance in an amount greater

22  than the amount of Lass's loan, the Bank's decision to do so—with attendant benefit to itself—

23  would seem to fit any notion of 'unjust.'").  For these reasons, numerous courts have consistently

24  rejected such "voluntariness" defenses.[42]  There is no reason to reach a different result here.

25

26  [42] *See, e.g., Cannon*, 917 F. Supp. 2d at 1053; *Ellsworth v. U.S. Bank, N.A.*, 908 F. Supp. 2d
27  1063, 1083 (N.D. Cal. 2012) (rejecting "voluntary payment doctrine" defense on motion to
    dismiss"); *Ulbrich v. GMAC Mortgage, LLC*, No. 11-62424, 2012 WL 3516499 (S.D. Fla. Aug.

PLAINTIFF'S REPLY MEMORANDUM
OF LAW IN FURTHER SUPPORT OF MOTION FOR CLASS
CERTIFICATION -42-
CASE NO. 2:11-cv-00988 RJB

NICHOLS KASTER PLLP
80 South Eighth Street, Suite 4600
Minneapolis, Minnesota  55402
TEL. 612.256 3200 • FAX 612.215 6870

Even setting aside the lack of merit of BoA's "voluntariness" defenses, the crucial fact for purposes of class certification is that they can be decided on a class-wide basis. *See Lane*, 2013 WL 3187410, at *8 (rejecting "voluntary payment doctrine" as an obstacle to class certification because such defenses can be resolved "based on common methods of proof"). All class members received the same "cycle letters," *see Opp. at 56*, and the question of whether those cycle letters insulate BoA from liability for everything that happened afterward is a classic class-wide issue that will be common to all class members. Similarly, the question of whether payment of force-placed premiums constitutes "consent" to the charges, given the fact that borrowers risked foreclosure if they did not pay these charges and could not refinance out of their existing mortgage if they did not pay these charges, is another class-wide issue that that can be resolved based on "common methods of proof" – and common sense.

**B.      Standing**

██████████████████████████████████████████████████

████████████████████████████████████████  BoA argues that borrowers have no standing to sue if they did "not pa[y] any of the lender-placed premiums." *Opp. at 57*. Thus, by BoA's reasoning, borrowers who paid the force-placed premiums cannot sue because they did so "voluntarily," and borrowers who did not pay the force-placed premiums cannot sue because they have not suffered an injury-in-fact. This "heads we win" and "tails you lose" reasoning is indicative of BoA's gamesmanship and bad faith.

The court in *Lane* squarely rejected this standing argument. *See Lane*, 2013 WL

15, 2012), at *2 ([Defendant] also contends that … Plaintiff's claim fails because Plaintiff could have avoided the inflated premiums 'by heeding the multiple notifications she received.' The Court does not agree."); *Williams v. Wells Fargo Bank, N.A.*, No. 11-21233, 2011 WL 4368980, at * 10 (S.D. Fla. Sept. 19, 2011) ("The fact that Plaintiffs, had they maintained insurance coverage on their properties, could have avoided being subject to this manipulation does not render the claim insufficient."); *accord, Alcoa Steamship Co., Inc. v. Perez*, 424 F.2d 433, 435 (1st Cir. 1970) ("Plaintiffs never sought this insurance . . . and have never made any claim against it. By appellee's reasoning a man who kidnapped a victim for ransom, upon being apprehended would have a claim for the taxi fare. Plaintiffs did not ask for this ride, and are not to be told that it must be paid for.").

NICHOLS KASTER PLLP
80 South Eighth Street, Suite 4600
Minneapolis, Minnesota  55402
TEL. 612.256.3200 • FAX 612.215.6870

3187410, at *11 ("Even if a borrower has been charged but has not yet paid for the expenses, the debt is an economic injury and lien upon his property sufficient to confer standing …").  As the court noted, "[e]ven if the borrower has not yet paid the charges, the borrower can seek to have his account credited in the amount of the unauthorized charge."  *Id.*; *accord*, *Ulbrich*, 2012 WL 3516499, at *2; *Dolfo v. Bank of America*, No. 11-cv-02828, ECF No. 88, at 7-8 (S.D. Cal. June 3, 2013) (certifying class of mortgage borrowers whose loans were wrongly impounded, regardless of whether the borrowers paid into the impounded loans) (*Second Richter Decl., Ex. 9*).

At best, BoA's arguments about whether class members are "delinquent on their mortgage or in foreclosure" (*Opp. at 57*) presents a question of set off, not of standing.  "Assuming that such a defense applies here, it pertains to the amount each class member may receive as damages … [and] does not detract from the action's suitability for class certification."  *Berrien v. New Raintree Resorts, Int'l, LLC*, 276 F.R.D. 355, 364 (N.D. Cal. 2011) (internal quotation marks and citation omitted); *see also James D. Hinson Elec. Contracting Co., Inc. v. Bell S. Tel.*, 275 F.R.D. 638, 647-48 (M.D. Fla. 2011) ("BellSouth's set-off rights … do not defeat certification.").  As the Ninth Circuit recently reaffirmed, "[t]he amount of damages is invariably an individual question and does not defeat class action treatment."  *Leyva*, 716 F.3d at 514 (quoting *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975)); *see also Robinson*, 1997 WL 634502, at *4 ("We conclude that common class issues of law and fact predominate over any individual issues in this [force-placed insurance] case. While individual issues are present, especially in the context of damages, they do not predominate.).

Moreover, even if it were problematic to include borrowers who are delinquent or the subject of a foreclosure proceeding, short sale, forbearance, or modification agreement, the solution to this "problem" would not be to deny certification.  Rather, the Court may narrow the class definitions if it deems it necessary, as the courts did in both *Lane* and *Williams.  See Lane*, 2013 WL 3187410, at *9-10; *Williams*, 280 F.R.D. at 675.  Although BoA argues that it will be

PLAINTIFF'S REPLY MEMORANDUM
OF LAW IN FURTHER SUPPORT OF MOTION FOR CLASS
CERTIFICATION -44-
CASE NO. 2:11-cv-00988 RJB

NICHOLS KASTER PLLP
80 South Eighth Street, Suite 4600
Minneapolis, Minnesota  55402
TEL. 612.256 3200 • FAX 612.215 6870

"difficult" to identify borrowers in these categories, it can be done.  *See Lane*, 2013 WL 3187410, at *9-10 ("This order recognizes that identifying the class members will entail some effort on the part of counsel for both parties; however, the information … is ascertainable from [the Bank's] records.").  Indeed, Wells Fargo already has done so in the *Williams* action.  *See Lane*, 2013 WL 3187410, at *9-10 (discussing class definition and recent class settlement in *Williams*).  BoA is no less capable.[43]

### C.    Estoppel by "Acceptance of Benefits"

BoA also asserts that "some borrowers" (it does not say who or how many) "may" be subject to a defense of estoppel by acceptance of benefits.  *Opp. at 59*.  However, this purported defense is hardly a basis for denying class certification.  The court in *Lane* was presented with the same "estoppel" and "acceptance of benefits" defenses, and held that they did not defeat class certification.  *See Lane*, 2013 WL 3187410, at *8 (rejecting "estoppel" defense, and stating that "[w]hether and to what extent class members … accepted the benefits of the force-placed insurance is a matter for trial, or summary judgment, based on common methods of proof.").

Moreover, BoA offers no evidence that any borrowers "have asserted claims based on their lender-placed insurance policies in the amount of the replacement cost of their property."  *Opp. at 57*.  This is nothing but sheer conjecture.  *Cf. Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d. 288, 298 (1st Cir. 2000) (rejecting argument that waiver defense raised individual issues because defendants' arguments were "woven entirely out of gossamer strands of speculation").  To the extent that any such borrowers exist – and BoA has not identified a single one – there will be very few of them, and they may be excluded from the relevant classes if the Court deems it necessary if and when this issue does in fact arise.[44]

---

[43] In the "standing" section of its brief, BoA also argues that some borrowers may have wanted replacement cost coverage and that "[n]o objective way exists … of ascertaining why particular borrowers receiving cycle letters purchased replacement cost coverage."  *Opp. at 58 n.56*.  This argument is simply a repackaging of BoA's "voluntariness" arguments discussed above.

[44] Of course, there would be absolutely no reason to exclude such borrowers from Plaintiff's proposed Kickback Classes because the mere fact that a borrower filed a claim on a lender-

PLAINTIFF'S REPLY MEMORANDUM
OF LAW IN FURTHER SUPPORT OF MOTION FOR CLASS
CERTIFICATION -45-
CASE NO. 2:11-cv-00988 RJB

NICHOLS KASTER PLLP
80 South Eighth Street, Suite 4600
Minneapolis, Minnesota  55402
TEL. 612.256 3200 • FAX 612.215 6870

### D.     Abstention

Finally, BoA's "abstention" defense is simply a repackaging of its "standing" defense, as both defenses are premised on the fact that some class members may be involved in "foreclosure proceedings" which involve issues relating to force-placed flood insurance charges. *See Opp. at 59-60.* As noted above, the courts in *Lane* and *Williams* dealt with the issue of foreclosure proceedings in their class certification orders. *See Lane*, 2013 WL 3187410, at *9-10; *Williams*, 280 F.R.D. at 675. This court is capable of dealing with the same issue in a similar fashion.[45]

## VII.   THE CLASS ACTION MECHANISM IS SUPERIOR TO INDIVIDUAL LAWSUITS

BoA does not seriously contest the superiority requirement of Rule 23(b)(3). As an afterthought at the end of its brief, BoA argues that there are "many" individual actions in which plaintiffs have brought claims relating to force-placed insurance. *Opp. at 58.* However, it only cites four, and only *one* of those cases (*Johnson*) relates to flood insurance. *Id. at 58 n.1.* Moreover, the *Johnson* case was dismissed on a Rule 12 motion. *See Johnson v. Bank of Am. Corp.*, No. 11-1284, 2013 WL 664906 (W.D. Mich. Feb. 22, 2013). Thus, ***BoA does not cite a single active case in which a borrower is currently pursuing claims against BoA on an individual basis relating to force-placed flood insurance***. This is, of course, not surprising. The cost of bringing an individual case against BoA would dwarf any individual recovery.

An examination of the other cases cited by BoA further reveals the hurdles faced by borrowers when they to try pursue actions against BoA on an individual basis. In both *Davis v.*

---

placed policy does not constitute an "acceptance" of kickbacks to the servicer or inflated premium charges to the borrower. Likewise, as BoA appears to concede, the fact that a borrower filed a claim on a lender-placed policy for less than the amount of coverage that BoA required does not constitute an "acceptance" of BoA's coverage requirement.

[45] Regardless, the Supreme Court's decision in *Colo. River Water Conservation District v. United States*, 424 U.S. 800 (1976) (cited in *Opp. at 57*) has no bearing on the issues before this Court. That case was not a class action. Nothing in *Colorado River* stands for the dubious proposition that class certification should be denied wholesale when some class members may be litigating their claims in other forums. In fact, many of the principals established by *Colorado River* weigh against abstention. *See id.* at 813.

PLAINTIFF'S REPLY MEMORANDUM
OF LAW IN FURTHER SUPPORT OF MOTION FOR CLASS
CERTIFICATION -46-
CASE NO. 2:11-cv-00988 RJB

NICHOLS KASTER PLLP
80 South Eighth Street, Suite 4600
Minneapolis, Minnesota  55402
TEL. 612.256 3200 • FAX 612.215 6870

1   *Bank of Am. Corp.*, No. 10-23, 2013 WL 141150 (S.D. Miss. Jan. 11, 2013) and *Schneider v.*

2   *Bank of Am., N.A.*, No. 11-2953, 2012 WL 761975 (E.D. Cal. Mar. 6, 2012), which involve

3   force-placed hazard insurance, the plaintiffs were *pro se*.  As may be expected, both *pro se*

4   litigants fared poorly in court against BoA, with the courts dismissing both actions. Thus,

5   contrary to BoA's assertion, these cases actually support Plaintiff's argument that "absent a class

6   action, Class [Members] would have no meaningful redress" against BoA.  *See Pl's Memo at 49*

7   (quoting *Chamberlain v. Ford Motor Co.*, 402 F.3d 952, 960 (9th Cir. 2005)).[46]

8       Forcing individuals to proceed on their own serves neither their best interest nor judicial

9   efficiency.  *See Pls' Memo at 48-49*.  No individual plaintiff could possibly afford to build the

10  extensive record that Plaintiff has painstakingly developed in this case to support his claims,

11  which includes the review of millions of pages of documents obtained from BoA and depositions

12  taken all over the country.  The prosecution and judicial resolution of these claims in a class

13  action is obviously superior.

14                                   **CONCLUSION**

15      For the above reasons, Plaintiff respectfully requests that this Court grant his motion and

16  certify each of the proposed classes.

17

18

19

20

21

22

23

24

---

25  [46] The last case cited by BoA, *Turnbull, et al. v. Bank of America, N.A., et al.*, No. BC493443
26  (Cal. Super. Ct. Oct. 16, 2012), does not fit here.  That case involves allegations that BoA
    improperly force-placed **hazard** insurance on the plaintiffs' home after it already had burned
27  down, and there was no longer anything to insure.

PLAINTIFF'S REPLY MEMORANDUM
OF LAW IN FURTHER SUPPORT OF MOTION FOR CLASS
CERTIFICATION -47-
CASE NO. 2:11-cv-00988 RJB

NICHOLS KASTER PLLP
80 South Eighth Street, Suite 4600
Minneapolis, Minnesota  55402
TEL. 612.256.3200 • FAX 612.215.6870

| | |
|---|---|
| 1 | Dated this 26th day of August, 2013. |

Respectfully Submitted,

NICHOLS KASTER, PLLP

By: /s/ Kai Richter
**E. Michelle Drake***
**Kai Richter***
4600 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Facsimile: (612) 215-6870
Email: drake@nka.com
          krichter@nka.com
*Admitted Pro Hac Vice*

-AND-

SHAPIRO HABER & URMY LLP

**Edward F. Haber** (BBO# 215620)*
**Adam M. Stewart** (BBO# 661090)*
53 State Street
Boston, MA 02109
Telephone: (617) 439-3939
Facsimile:     (617) 439-0134
Email: ehaber@shulaw.com
          astewart@shulaw.com
*Admitted Pro Hac Vice*

-AND-

BERGER  & MONTAGUE, P.C.

**Shanon J. Carson***
**Patrick F. Madden***
1622 Locust Street
Philadelphia, PA  19103
Telephone: (215) 875-4656
Facsimile: (215) 875-4604
Email:  scarson@bm.net
          pmadden@bm.net
*Admitted Pro Hac Vice*

-AND-

PLAINTIFF'S REPLY MEMORANDUM
OF LAW IN FURTHER SUPPORT OF MOTION FOR CLASS
CERTIFICATION -48-
CASE NO. 2:11-cv-00988 RJB

TAUS, CEBULASH & LANDAU, LLP

**Brett Cebulash**\*
**Kevin S. Landau**\*
80 Maiden Lane, Suite 1204
New York, NY 10038
Telephone: (212) 931-0704
Email: bcebulash@tcllaw.com
         klandau@tcllaw.com
*Admitted Pro Hac Vice*

-AND-

STOLL STOLL BERNE LOKTING
& SHLACHTER P.C.

**Timothy S. DeJong**, OSB No. 940662\*
209 SW Oak Street, 5th Floor
Portland, OR 97204
Telephone: (503) 227-1600
Facsimile:      (503) 227-6840
Email:  tdejong@stollberne.com
*Admitted Pro Hac Vice*

-AND-

TERRELL MARSHALL DAUDT &
WILLIE PLLC

**Beth E. Terrell**, WSBA # 26759
**Michael D. Daudt**, WSBA #25690
936 North 34th Street, Suite 400
Seattle, Washington  98103-8869
Telephone:  (206) 816-6603
Facsimile: (206) 350.3528
Email:  bterrell@tmdwlaw.com
         mdaudt@tmdlaw.com

**Attorneys for Plaintiff**

1
2

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**

3

**CERTIFICATE OF SERVICE**
Skansgaard v. Bank of America, N.A., et al.

4

Court File No.: 2:11-cv-00988-RJB

5

The undersigned certifies under penalty of perjury under the laws of the State of

6

Washington and the United States that on this day, I electronically filed a true and accurate copy

7

of the document to which this certification is affixed with the Clerk of the Court using the

8

CM/ECF System, which will send notification of such filing to the following:

9

10

John S. Devlin, III devlinj@lanepowell.com
Jacob M. Downs downsj@lanepowell.com

11

Timothy S DeJong tdejong@ssbls.com
Michael Duane Daudt mdaudt@tmdwlaw.com

12

Beth E. Terrell bterrell@tmdwlaw.com
David L. Permut dpermut@goodwinprocter.com

13

Matthew G. Lindenbaum MLindenbaum@goodwinprocter.com
Kai H. Richter krichter@nka.com

14

E. Michelle Drake drake@nka.com

15

John C. Englander jenglander@goodwinproctor.com
Adam M. Stewart astewart@shulaw.com

16

Edward F. Haber ehaber@shulaw.com
Patrick F. Madden pmadden@bm.net

17

Shanon J. Carson scarson@bm.net
Brett Cebulash bcebulash@tcllaw.com

18

Kevin S Landau klandau@tcllaw.com

19

Brian M. LaMacchia BLaMacchia@goodwinprocter.com
Katherine J. Shinners  kshinners@goodwinprocter.com

20

21

The undersigned further certifies that the unredacted, sealed version of the foregoing

22

reply memorandum and supporting materials are being sent to Defense Counsel via E-Mail at the

23

following address:

24

Matthew G. Lindenbaum, Esq. mlindenbaum@goodwinprocter.com
John C. Englander, Esq. jenglander@goodwinprocter.com

25

Brian M. LaMacchia, Esq. blamacchia@goodwinprocter.com

26

27

PLAINTIFF'S REPLY MEMORANDUM
OF LAW IN FURTHER SUPPORT OF MOTION FOR CLASS
CERTIFICATION -50-
Case No. 2:11-cv-00988 RJB

1

2    Executed on Monday, August 26, 2013.                    /s/ Kai Richter
                                                             Kai Richter
3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

PLAINTIFF'S REPLY MEMORANDUM
OF LAW IN FURTHER SUPPORT OF MOTION FOR CLASS
CERTIFICATION -51-
CASE NO. 2:11-cv-00988 RJB

NICHOLS KASTER PLLP
80 South Eighth Street, Suite 4600
Minneapolis, Minnesota  55402
TEL. 612.256 3200 • FAX 612.215 6870